**Laurent GRANIER**
**1999 S. Bascom Avenue, Ste 700**
**CAMPBELL, CA  95008**
**Phone : 310 663 1519**
**Pro Se Plaintiff,**

ADR

E-filing

FILED

DEC 0 8 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Laurent GRANIER,<br>PLAINTIFF,<br><br>vs.<br><br>- Jack LADD ;<br>- Lyle WOLLERT ;<br>- James PETTIT ;<br>- Ryan YORK;<br>- Phil WOWAK;<br>- CJ. LUCAS;<br>- Cynthia VELASCO ;<br>- Cynthia DRAGER ;<br>- Bob JORGENSON ;<br>- GAIL LOUIS ;<br>- Chris BAGGALEY ;<br>« INTERINSURANCE EXCHANGE OF<br>THE AUTOMOBILE CLUB » ;<br>- «AAA SOUTHERN CALIFORNIA» ;<br>- Robert T. BOUTTIER ;<br>- John F. BOYLE ;<br>- David LANG ;<br>- Scott KWIERAN ;<br>- James ROBBINS ;<br>- Glenn RENWICK ;<br>- Chuck JARRET ;<br>« PROGRESSIVE WEST INSURANCE<br>COMPANY » ;<br>- Tom HAINES ;<br>- Paul VINCENT ;<br>- Joseph A. FARROW ;<br>- « California Highway Patrol » ;<br>- Salvador ORTIZ ;<br>- Nancy FLORES ;<br>- Dave JONES ;<br>- « California Department of Insurance »;<br>- Jean M. SHIOMOTO ;<br>- « Department of Motor Vehicles of<br>California" ;<br>- Edmund Gerald "Jerry" BROWN ;<br>« State of California » ;<br>Perri Noelle MONTGOMERY;<br><br>and DOES 1-50, inclusive<br><br>DEFENDANTS. | Case n° **CV 14 . 0 5 3 7 2**<br><br>HRL<br><br><br>**DEMAND FOR JURY TRIAL** |

1    **1. JURISDICTION.**

2    This Court has jurisdiction over this complaint because it arises under the laws of the United States, under

3    federal questions jurisdiction and about Civil Rights.

4    List not limited of laws and articles involved :

5             18 U.S. Code § 201 - Bribery of public officials and witnesses

6             18 U.S. Code § 241 - Conspiracy against rights

7             18 U.S. Code § 242 - Deprivation of rights under color of law

8             18 U.S. Code § 873 – Blackmail

9             18 U.S. Code § 1506 - Theft or alteration of record or process; false bail

10            18 U.S. Code § 1510 - Obstruction of criminal investigations

11            18 U.S. Code § 1621 - Perjury generally

12            18 U.S. Code § 1623 - False declarations before grand jury or court

13            18 U.S. Code § 2312 - Transportation of stolen vehicles

14            18 U.S. Code § 2313 - Sale or receipt of stolen vehicles

15            18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys,...

16            18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle parts

17            31 CFR 561.310 - Money laundering

18            36 CFR 1275.44 - Rights and privileges; right to a fair trial.

19            42 U.S. Code § 1981 - Equal rights under the law

20            42 U.S. Code § 1982 - Property rights of citizens

21            42 U.S. Code § 1983 - Civil action for deprivation of rights

22            42 U.S. Code § 1985 - Conspiracy to interfere with civil rights

23            42 U.S. Code § 1986 - Action for neglect to prevent

24            42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury

25   **2. VENUE.**

26   Venue is appropriate in this court because several defendants live in this district, the main defendants who

27   committed the offenses and acted, live in this district, and a substantial amount of the acts or omissions, and

28   the main acts concerning this lawsuit occurred in this district.

1    **3. INTRADISTRICT ASSIGNMENT.**

2    This lawsuit should be assigned to the SAN JOSE DIVISION of this court because a substantial parts of

3    the events or omissions which give rise to this lawsuit occurred in Santa Cruz County.

4    **4. PARTIES.**

5    - Plaintiff, Laurent GRANIER, an individual, originally victim of a car accident, is author, inventor,

6    theoretician, Master Philosopher.

7    Defendants,

8    - Jack LADD is the owner of « LADD'S Auto Body & Towing » located in Santa Cruz, an individual,

9    regarding his offenses committed deliberately, so, he is sued in his individual and official capacities,

10   address : 6085 Highway 9  Felton  CA 95018 ;

11   - Lyle WOLLERT is the manager of « LADD'S Auto Body & Towing » located in Santa Cruz, an individual,

12   regarding his offenses committed deliberately, so, he is sued in his individual and official capacities,

13   address : 6085 Highway 9  Felton  CA 95018 ;

14   - James PETTIT is agent for « DMV », having the authority and the agreement to register liens on vehicles,

15   an individual, regarding his offenses committed deliberately in association with Jack LADD, so, he is sued in

16   his individual and official capacities, address :1815 Eucalyptus Ave SEASIDE CA 93955;

17   - Ryan YORK is the Deputy Sheriff representing the Sheriff-Coroner Phil WOWAK, of the County of Santa

18   Cruz, an individual, regarding his offenses committed deliberately, he is sued in his individual and official

19   capacities, address :701 Ocean Street Room 340 SANTA CRUZ CA 95060 ;

20   - Phil WOWAK is the Sheriff-Coroner of the County of Santa Cruz, an individual, regarding offenses

21   committed deliberately under his responsibility without his knowledge, he is sued in his official capacity,

22   address :701 Ocean Street Room 340 SANTA CRUZ CA 95060 ;

23   - CJ. LUCAS is Claims Manager at « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE

24   CLUB », an individual, regarding her offenses committed deliberately, so, she is sued in her individual and

25   professional capacities, address : 420 E. Huntington Dr ARCADIA  CA 91006 ;

26   - Cynthia VELASCO is the Manager of CJ. LUCAS at « INTERINSURANCE EXCHANGE OF THE

27   AUTOMOBILE CLUB », an individual, regarding offenses committed deliberately under his responsibility,

28   so, she is sued in her individual and professional capacities, address : 420 E. Huntington Dr ARCADIA  CA

1   91006 ;

2   - Cynthia DRAGER is Claims Service Representative at « INTERINSURANCE EXCHANGE OF THE

3   AUTOMOBILE CLUB », an individual, regarding her offenses committed deliberately, so, she is sued in her

4   individual and professional capacities, address :27421 Tourney Road  VALENCIA CA 91355 ;

5   - Bob JORGENSON is the Manager of Cynthia DRAGER at « INTERINSURANCE EXCHANGE OF THE

6   AUTOMOBILE CLUB », an individual, regarding offenses committed deliberately under his responsibility,

7   so, he is sued in his individual and official capacities, address : 27421 Tourney Road   VALENCIA   CA

8   91355 ;

9   - GAIL LOUIS is the legal Agent for Service for « INTERINSURANCE EXCHANGE OF THE

10  AUTOMOBILE CLUB », and for « AAA SOUTHERN CALIFORNIA »,  an individual, regarding offenses

11  committed deliberately under his responsibility, and his deliberate failure of his legal duty, he is sued in her

12  individual, official and professional capacities, address : 3333 FAIRVIEW ROAD, A451, COSTA MESA,

13  CA 92626 ;

14  - Chris BAGGALEY is Sr VP Insurance Operations at « Automobile Club of Southern California », an

15  individual, regarding offenses committed deliberately under his responsibility and management, so, he is

16  sued in his individual and official capacities, address : 3333 FAIRVIEW ROAD, COSTA MESA, CA

17  92626 ;

18  - « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » is the real name of the insurance

19  company of «AAA SOUTHERN CALIFORNIA», the insurance company of the person who is fully

20  responsible of the car accident and victimized Plaintiff, a corporation, address : 3333 FAIRVIEW ROAD,

21  COSTA MESA, CA  92626 ;

22  - «AAA  SOUTHERN  CALIFORNIA»  is  the  corporation  which  handles  « INTERINSURANCE

23  EXCHANGE OF THE AUTOMOBILE CLUB », a corporation, address : 3333 FAIRVIEW ROAD, COSTA

24  MESA, CA  92626 ;

25  - Robert T. BOUTTIER is the Chief Executive Officer, President of « AAA SOUTHERN CALIFORNIA »,

26  an individual, regarding offenses committed deliberately under his responsibility and management, so, he is

27  sued in his individual and official capacities, address : 3333 FAIRVIEW ROAD, COSTA MESA, CA

28  92626 ;

1   - John F. BOYLE is the Executive Vice President of « AAA SOUTHERN CALIFORNIA », an individual,

2   regarding offenses committed deliberately under his responsibility and management, so, he is sued in his

3   individual and official capacities, address : 3333 FAIRVIEW ROAD, COSTA MESA, CA  92626 ;

4   - David LANG is the Vice President of « AAA SOUTHERN CALIFORNIA », an individual, regarding

5   offenses committed deliberately under his responsibility and management, so, he is sued in his individual and

6   official capacities, address : 3333 FAIRVIEW ROAD, COSTA MESA, CA  92626 ;

7   - Scott KWIERAN is Claims Investigator at « PROGRESSIVE WEST INSURANCE COMPANY », an

8   individual, regarding his offenses committed deliberately, so, he is sued in his individual and official

9   capacities, address : 4141 Ruffin Road, SAN DIEGO, CA 92123 ;

10   - James ROBBINS is the Manager of Scott KWIERAN at « PROGRESSIVE  WEST  INSURANCE

11   COMPANY », an individual, regarding his offenses committed deliberately, so, he is sued in his individual

12   and official capacities, address : 4141 Ruffin Road, SAN DIEGO, CA 92123 ;

13   - Glenn RENWICK is the President and Chief Executive Officer of « PROGRESSIVE Insurance », an

14   individual, regarding offenses committed deliberately under his responsibility and his management, so,he is

15   sued in his individual and official capacities, address : 6300 Wilson Mills Road, MAYFIELD VILLAGE,

16   OH 44143-2182 ;

17   - Chuck JARRET is the Chief Legal Officer at « PROGRESSIVE Insurance », an individual, regarding

18   offenses committed deliberately under his responsibility and management, so, he is sued in his individual and

19   official capacities, address : 6300 Wilson Mills Road, MAYFIELD VILLAGE, OH 44143-2182 ;

20   - « PROGRESSIVE  WEST  INSURANCE  COMPANY » is the insurance company of Plaintiff, a

21   corporation, address : 6300 Wilson Mills Road, MAYFIELD VILLAGE, OH 44143-2182 ;

22   - Tom HAINES is the Regional Manager Automotive Services at « AAA Northern California, Nevada &

23   Utah », an individual, regarding his offenses committed deliberately, so, he is sued in his individual and

24   official capacities, address : 1900 Powell Street, Suite 1200 EMERYVILLE CA 94608 ;

25   - Paul VINCENT is the captain and higher responsible of the   « California Highway Patrol » office in the

26   county of Santa Cruz, an individual, regarding his offenses committed deliberately, so, he is sued in his

27   individual and official capacities, address : 10395 Soquel Drive APTOS  CA 95003-4937 ;

28   - « California Highway Patrol » is the State Police Department, which is under the authorities of

1  Commissioner, Secretary of California State Transportation Agency (CalSTA) and Governor, a public

2  administration, address : 601 N 7th Street, SACRAMENTO, CA 95811 ;

3  - Joseph A. FARROW is Commissioner of « California Highway Patrol », an individual, regarding offenses

4  committed deliberately under his responsibility without his knowledge, so, he is sued in his official capacity,

5  address : 601 N 7th Street, SACRAMENTO, CA 95811 ;

6  - Salvador ORTIZ, is the General Manager of the branch of the company « Copart », located at San Martin -

7  County of Santa Clara-, an individual, regarding his offenses committed deliberately, so, he is sued in his

8  individual and official capacities, address : 13895 Llagas avenue, SAN MARTIN, CA 95046 ;

9  - Nancy FLORES is the legal Agent for Service for « PROGRESSIVE WEST INSURANCE COMPANY »

10  and for « AAA Northern California CSAA INSURANCE EXCHANGE », an individual, regarding offenses

11  committed deliberately under his responsibility without her knowledge, so, she is sued in her official

12  capacity, address : C/O CT CORPORATION SYSTEM, 818 West Seventh Street, LOS ANGELES, CA

13  90017 ;

14  - Dave JONES is Commissioner at « California Department of Insurance », an individual, regarding offenses

15  committed deliberately under his responsibility with his knowledge, so, he is sued in his individual and

16  official capacities, address : 300 Capitol Mall, Suite 1700 SACRAMENTO, CA 95814 ;

17  - « California Department of Insurance » (CDI), a public administration, is the agency which has the

18  responsibility of the registration, the regulation, the control and the sanction of insurance companies in

19  California, address : 300 Capitol Mall, Suite 1700 SACRAMENTO, CA 95814 ;

20  - Jean M. SHIOMOTO, an individual, is the Director of « Department of Motor Vehicles » (DMV) of

21  California, regarding offenses committed deliberately under his responsibility without her knowledge, she is

22  sued in her official capacity, address : 2415 1st Ave., Mail Station F101, SACRAMENTO, CA 95818-2606 ;

23  - « Department of Motor Vehicles » (DMV) of California is a public administration, address : 2415 1st Ave.,

24  SACRAMENTO, CA 95818-2606 ;

25  - Edmund Gerald "Jerry" BROWN, an individual, as Governor of the State of California is responsible of the

26  agencies « California Highway Patrol » (CHP), SHERIFF departments as state police, « California

27  Department of Insurance » (CDI), « Department of Motor Vehicles » of California (DMV), regarding

28  offenses committed deliberately under his responsibility and with his knowledge, so, he is sued in his

1 individual and official capacities , address : c/o State Capitol, Suite 1173, Sacramento, CA 95814 ;

2 « State of California », is a public administration, address : Office of the Attorney General, 1300 1st Street,

3 1142 Sacramento, CA 95814-2963 ;

4 Perri Noelle MONTGOMERY, an individual, is the responsible of the car accident, regarding offenses

5 committed deliberately by third parties without her knowledge, she is sued in her individual capacity,

6 address : 1218 N. Branciforte Street, SANTA CRUZ, CA 95060.

7 For memo :

8 - « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA »

9 is the old name of « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB », ;

10 - « AAA SOUTHERN CALIFORNIA Insurance », « CAA » and « CAA insurance » are the fake names for

11 the insurance company « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » used by

12 people working at this insurance company and at «AAA SOUTHERN CALIFORNIA». « CAA » is the name

13 of the insurance company written on the insurance policy card of Perri Noelle MONTGOMERY.

14 **5. STATEMENTS OF FACTS.**

15 <div align="center">**Preamble. The origin.**</div>

16    **1.** Plaintiff, Laurent GRANIER has had a car accident when driving his car, a classic british one, a 53

17         MG, the afternoon of the 09th of october 2014, around 3 pm, on the highway 9 in the direction from

18         Felton to Boulder Creek. Perri Noelle MONTGOMERY arriving fast behind him in her SUBARU,

19         was unable to stop, and even to avoid Laurent GRANIER's car, and she hit it in the right side of the

20         back. She is 100% responsible.

21    **2.** Neighbors having heard the collision, went outside and called 911. Ambulance arrived first, and

22         Police later. Because Plaintiff, Laurent GRANIER had pain in his back, left shoulder, his neck and

23         his left bottom, he has been taken by an ambulance to the Hospital of Santa Cruz (Dominican). By

24         this time, Police officer who did the report, called a company, « LADD's » from Felton, agreed by

25         « AAA », to tow the two cars.

26    **3.** Before to be taken by the ambulance to hospital, Laurent GRANIER gave to the Police Officer a

27         copy of his « AAA » membership (« Premier », which is the highest grade) in order to do the work

28         under his own privilege.

4.  Since this date and time, Jack LADD, owner of « LADD'S Auto Body & Towing », and Lyle WOLLERT, manager of « LADD'S Auto Body & Towing » had the responsibility to keep the car for the owner, Plaintiff, who became their client.

**General Environment.**

5.  For the following days, Plaintiff, Laurent GRANIER being victim, has had to manage his body pain, and his property damages, in order to avoid an increase of each of them, and the creation of new ones in his private and professional lifes, caused by all the hassle coming from the accident.

6.  During this difficult time, Laurent GRANIER was alone, being not helped by his own insurance company, « PROGRESSIVE/DRIVE », and let alone by the insurance of the other driver, in order to settle his expenses, his losses, like an hotel because he had to stay in this area to settle the problems caused by the accident, body pain and property damages.

7.  Yet, the day after the accident, he filed the claim to his insurance. But, he has had no help, no assistance, no advise like the simple fact how and what to do. The claim manager of « PROGRESSIVE/DRIVE » has even closed the claim about the accident.

8.  Fortunately, his insurance agent helped Laurent GRANIER by explaining him that, as victim, and as the other person who caused the accident was identified, and insured, Plaintiff had to do everything by himself, his own insurance company having not to take care of his situation anymore. And so, Plaintiff had to contact directly the insurance of the driver who victimized him...

9.  The following monday, having no help, no assistance from his own insurance, Plaintiff has had to get information about the other driver and her insurance, by going to Police station.

10. The information about the insurance company of the adverse party was noted only under the name « CAA ». In fact, it was a trickery made by this insurance company because, in addition not to be the real name, it was indeed the insurance company under « AAA SOUTHERN CALIFORNIA », the Automobile Club which is different of the one, named « AAA NORTHERN CALIFORNIA ».

11. For information, the driver who caused the accident, Perri Noelle MONTGOMERY, has her address in Santa Cruz, Northern California.

12. In fact, with only the name « CAA », which is wrong, but fake too, and not registered as is at « California Department of Insurance » (CDI), Plaintiff was lost, even not knowing who to call. His

1    insurance agent helped him to find and to reach the company so-called « CAA ».

13. The first claim representative of the so-called insurance company « CAA » was disrespectful and dishonest, trying yet, in association with her internal colleague lawyer, to screw Plaintiff, using the advantage of the situation of weakness of the victim, because they wanted yet to take the car since the beginnng.

14. Laurent GRANIER as « AAA premier member » at « Northern California » went to the branch in Santa Cruz to get help. He got it by the assistant branch manager who called the « AAA SOUTHERN CALIFORNIA INSURANCE » and finally by the fact that the claims manager, LJ. LUCAS, took the case.

15. Plaintiff talked to her from the phone of this branch in Santa Cruz. In fact, it was a trap, and she was there to win time and to save money for her company, so-called « AAA SOUTHERN CALIFORNIA Insurance », and so by getting more advantage by increasing the difficulty of Plaintiff situation.

16. In the accident, Plaintiff's laptop was broken. Being his important tool because Laurent GRANIER is writer, author, inventor, theoretician, Master Philosopher, and so, having inside a lot of confidential and important documents, information and data, he had to repair it as soon as possible.

17. Laurent GRANIER got his laptop back ten days later, on monday 20th of october 2014. He paid with his own money, and sent at once the invoice to CJ. LUCAS. But, instead to be professional according her duty, to be fair and honest according that the victim has had to pay in advance expenses for which is not responsible, CJ. LUCAS did not sent the check for the money that the insurance company, whatever its real name, owed to him, yet. By the time of all the previous week, Laurent GRANIER tried to make understand to CJ. LUCAS that his MG was not a junk, even it was 61 years old, and had a great real value. She needed several days to understand that she had to send an expert to evaluate the damages and the value regarding its condition. The expert, Steve DOUGLAS, came on monday 20th of october 2014 to « LADD'S Auto Body & Towing » in Felton.

18. In fact, by this time, CJ. LUCAS, Claims Manager, was building a dishonest strategy in order to screw Plaintiff.

19. She was insisting to ask proof of the cost of his car, while « CAA » or whatever its real name, as any insurance company has to pay victims for the replacement value, and not its cost, or its purchase

1       price.

2   **20.** Before that CJ. LUCAS decided to send an expert, Laurent GRANIER sent her, pictures of his car

3       before the accident, and after. She can check by herself that the car was in a pristine condition, fully

4       restaured several months earlier. She asked him too, if he wanted to keep the car. Laurent GRANIER

5       explained to her that he can not decide to keep it or not before to know its value as accidented car.

6       Indeed, she prepared yet to screw Plaintiff. She began by saying him, later, there was « limits »,

7       meaning, about the amount of the total of his damages. Laurent GRANIER replied to her that he did

8       not care, it was not his business, nor his problem, that he was not her client, and they have to pay the

9       damages caused by their client. Period.

10  **21.** She won two days more, knowing yet the tuesday 21st of october that the car was total loss. A total

11      loss according herself, without proof nor justification, even not the expertise she asked for. But, she

12      waited one day more to say to Laurent GRANIER, Plaintiff, that his car was estimated at the strange

13      and low price of \$17,086.20. It was despite the fact, that two days before, Laurent GRANIER sent to

14      CJ. LUCAS an ad about the same car, 53 MG TD, in the same condition but not the same color, for

15      sale by a professional at \$39,990.

16  **22.** So, since the beginning CJ. LUCAS, claims Manager at « ARCADIA CLAIMS » tried to win time,

17      and to take advantage on the victim she was supposed to alleviate, to reduce and to erase his

18      damages, his difficulties, his distress, his pain. Indeed, she increased the difficulty and the pains of

19      the Plaintiff, and even she created new ones, in order to get more and more power, causing more and

20      more damages on his life, private and professional, and so, to force him to accept the unacceptable

21      offer of less than the half of the value of his car. She even used blackmails with the money she had to

22      repay for the repair of the laptop, with the running storage fees, and she avoided to mention

23      Plaintiff's expenses for the rental car, for the hotel. Her email was just a text, with no document, no

24      expertise. Nothing real and official, but just an unprofessional, careless, provocative, disrespectful

25      text containing this below, even not including the tax for the tow and the storage, nevertheless the

26      fact she had to pay those expenses too :

27          *Vehicle value \$17,086.20*

28          *Tax (8.75%) \$1,495.04*

1        *Prorata lic fees $172.00*

2        *Total $18,753.24*

3        *Computer $369.94*

4        *Tow and Storage $180 tow*

5        *15 days at 75 p/day $1,305.00*

6        *Total claim $20,428.18*

7    **23.** At once, Plaintiff sent to Defendants, CJ. LUCAS and her manager, Cynthia VELASCO, several

8        emails under the title of « *Re: Claim: 011665727 FORMAL NOTICE of CRIMINAL COMPLAINT*

9        *and CIVIL LAWSUIT FOR CRIMINAL OFFENSES* » to ask them proofs about this fanciful estimate

10        of his car -expertise report-, and by the same time, all legal information about the company she

11        worked for and spoke and decided in its name, and the name of its highest responsibles. None of

12        them replied, but CJ. LUCAS took care, to send three times the same email from a prior email, so

13        with only the title « *Claim: 011665727* », and so, in order to avoid to give to Plaintiff the proof she

14        had received his FORMAL REQUEST. For information, copy of each FORMAL NOTICE sent by

15        Plaintiff to CJ. LUCAS, has been sent to Cynthia VELASCO, Steve DOUGLAS, « Property

16        Damages Appraisers, Inc. » (the company the latter works for), and Daniel WARNICK, Claims

17        Manager at « PROGRESSIVE/DRIVE ».

18    **24.** Laurent GRANIER, as yet victim, and being screwed, facing ingratitude, disrespect, dishonesty, bad

19        faith from the representatives of the insurance company which has to pay him, decided not to give up

20        anything anymore, and asked for all his losses.

21    **25.** So, in each FORMAL NOTICE, he claimed :

22            $40,000 for the value of his car ( few evaluations on internet give a price up to 50,000);

23            $5,000 for the sentimental value about the loss;

24            $5,000 for the additional value of his car having black original plates of State of California;

25            $4,400 for tax and registration;

26            $5,000 for his future personal expenses to find a new car like this one, expecting at least 3

27            months;

28            $5,000 to travel and to check the car before to buy it, because most of time pictures in ads

1    are not the reality and we go for nothing;

2    $100 daily for the loss of pleasure to use his car because it is not a commuting car but a

3    pleasure, what is proved by its nature, classic car, but also by the fact it is a convertible, and

4    it is declared at his insurance as a pleasure car, so starting from the day of the accident until

5    the day he'll find one exactly the same, condition and color;

6    $100 daily to rent a car until the date he'll find a new one to replace it;

7    $350 for the rental car of the first week ;

8    $1,300 for the two weeks at hotel which is not finished at the day of the complaint ;

9    So, a total of $72,050 for property damages and expenses, without the damages caused by

10   their deliberate dirty and unlawful behaviour on his health, on his life and on his work.

11   **26.** Being CEO of a corporation in California and a Company in London, from one side, and author,

12   inventor, theoretician, master philosopher, from another one, all those troubles, all those hassle

13   disturbed his mind, his main tool, and so his lifes, professional and private, and so, Plaintiff was

14   asking at least $500,000.

15   **27.** Plaintiff, Laurent GRANIER filed a complaint to « California Department of Insurance » (CDI) for

16   the lacks and misconducts of some responsibles of the insurance company, self-named « AAA

17   SOUTHERN CALIFORNIA INSURANCE ». But « CDI » did nothing, meaning did not investigate

18   about the serious criminal offenses committed by a company under its jurisdiction and regulation, as

19   yet, the use of a fake name, « CAA ».

20   **28.** Plaintiff filed the 28th of october 2014, a complaint at Superior Court of Santa Cruz, asking for a jury

21   trial, essentially against CJ. LUCAS, Cynthia VELASCO, GAIL LOUIS, Chris BAGGALEY, «

22   AAA SOUTHERN CALIFORNIA Insurance », « INTERINSURANCE EXCHANGE OF THE

23   AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA », « INTERINSURANCE EXCHANGE

24   OF THE AUTOMOBILE CLUB », « AAA SOUTHERN CALIFORNIA », Robert T. BOUTTIER,

25   John F. BOYLE,  David LANG,  Steve DOUGLAS, Dave JONES, « California Department of

26   Insurance », Jerry BROWN, « State of California », Daniel WARNICK, about 11 cases of action.

27                    **Close Environment. First acts regardings Defendants.**

28   **29.** Morning of the 29th of october 2014, around 9, Plaintiff went to Ladd's, to see his car. He discovered

1    that it was not there. First, Lyle WOLLERT, manager, told him that someone picked it up the day
2    before, saying by the « insurance company », but without mentioning its name. Plaintiff felt at once a
3    strange problem with the responsible of this company, because his own insurance company
4    « PROGRESSIVE » did not care about his car, and even, it has not to pick up his car without his
5    agreement. Plaintiff asked him to give him a copy of the document from the person who took the car,
6    as he has to ask when he releases any car. It is the Law.

7    **30.** He did not know, and told to Plaintiff to see with the owner, Jack LADD. Jack LADD gave indeed to
8    Plaintiff, instead of a document given by a the so-called person who took the car, a copy of the
9    invoice Jack LADD did himself about the tow and storage of his car, and about which it has been
10   paid by the person who took the car. The amount was a strange higher and round price than really
11   due, $1750,00. His explanation was unclear and nebulous. A fact more suspicious, Jack LADD
12   laughed when Plaintiff told him he was going to sue him for his misconduct, and he just replied «
13   Good Luck ».

14   **31.** At once, Laurent GRANIER went to Sheriff's office in Felton to file a report about the theft. He was
15   well comen, but he waited half an hour for the deputy Ryan YORK, who had to come back to the
16   office to take his complaint. Ryan YORK is Deputy Sheriff representing Sheriff-Coroner Phil
17   WOWAK. He asked to Laurent GRANIER, only one question about where was the car before the
18   theft, but he seemed to have yet an idea, a position to take. He went to a room and called Jack LADD
19   in private. Few minutes later, Ryan YORK came back and told to Laurent GRANIER that his car had
20   been picked it up by the insurance company, a so-called « CAA » and so, declaring it was a civil
21   case, and not a crimInal one, the car was not stolen. Indeed, Ryan YORK said everything that Jack
22   LADD told him, even his judgement and legal advises, which is totally unlawful.

23   **32.** Laurent GRANIER replied that he did not agree because first, « CAA » is not an insurance company,
24   second, his insurance company is « PROGRESSIVE » and not « CAA », and third, he never gave the
25   authorization to anyone to pick up his car, and none had the right to take it, and so, it was not a cvil
26   case but a criminal one, a theft. Laurent GRANIER insisted to file a report, but Ryan YORK refused,
27   and Laurent GRANIER asked him to give him a report about his conversation with Jack LADD. He
28   refused too.

1    **33.** Laurent GRANIER, yet victim of an accident, yet victim of blackmails and other criminal offenses

2        committed by CJ.LUCAS, became a new victim of a steal, and in addition, of a corruption of the

3        authorities to protect the criminals who victimized him. Having yet faced the corruption of the Police

4        of Santa Cruz and even political persons of the city, as the mayor, the vice mayor, the risk manager,

5        who protect people of the local mob, about what Plaintiff has had to file a complaint, now, facing the

6        corruption of the County by its authority, Sheriff department, Laurent GRANIER had to file a new

7        complaint.

8    **34.** As Plaintiff's car disappeared without his kowledge, his authorization, his agreement, and according

9        the declaration and the lack of knowledge of some important facts, thanks to the dissimulation, lies,

10        trickeries and cheating committed by Jack LADD and Lyle WOLLERT, Plaintiff was facing to

11        consider two ways to treat this case :

12   **35.** If the car was considered as « picked up », so, it had to be considered as stolen before the delivery to

13        the unknown man, so Jack LADD and Lyle WOLLERT were the author of the theft, and so, the

14        persons following, from the unknown man to the last one getting the car, are under the offense of

15        « receiving stolen goods » ; and if the car was considered as stolen by the unknown man, Jack

16        LADD and Lyle WOLLERT were only his accomplices of the theft.

17   **36.** Plaintiff can not accept the possibility that Jack LADD and Lyle WOLLERT were only victims of a

18        scam because they deliberately hide the identity of the person who « picked up » the car, and they

19        did not respect their duty and their obligation to release a property under their responsibility.

20   **37.** So, Plaintiff understood that, in anyway, Jack LADD and Lyle WOLLERT were deeply involved in a

21        organized gang theft, and even being the main responsible because the first act of the offense, the

22        theft, can only happen with their help, and can not occur without their assistance.

23   **38.** So, Plaintiff filed a civil complaint asking for a jury trial, the 30th of october 2014 at Superior Court

24        of Santa Cruz against Jack LADD, Lyle WOLLERT, Ryan YORK and Phil WOWAK for 6 causes of

25        actions based on the few information he got at this time, and according for their first offenses.

26   **39.** Plaintiff, victim, did not mention in this complaint CJ. LUCAS nor any other name of person or

27        company because he had not the proof that the car has been stolen by one of them, and the only ones

28        « witnesses », Jack LADD and Lyle WOLLERT, refused to reveal the truth, because they were too,

1    the accomplices, the partners and the first robbers. And anyway, facing their unclear explanation and

2    their unlawful and unprofessional behaviour to release the car, Plaintiff had no clue in order not to

3    determine that Jack LADD and Lyle WOLLERT had not kept the car for themselves.

4    **40.** Plaintiff filed the 30th of october 2014, a claim to his insurance company, « PROGRESSIVE », to

5    report his car as stolen, in order to be removed as responsible of what can occur on his car, and what

6    can be occured by it.

7    **41.** The friday 31st of october 2014, Plaintiff went to FBI office located in Campbell to file a report about

8    the federal offenses committed by Jack LADD and Lyle WOLLERT against him, regarding yet the

9    fact they had accepted to be paid by another person than the one named in their invoice, Laurent

10   GRANIER, and worse, by an unknown and non identified person according Jack LADD. This fact is

11   the same offense than if someone deposits money on a bank account without the authorization, nor

12   the knowledge of his owner.

13   **42.** Because their office was closed on weekend, Plaintiff waited until the monday 3rd of november 2014

14   to go to « California Highway Patrol » located in Aptos -Santa Cruz County-, to declare his car as

15   stolen. The officer was professional and took at once his complaint, and she called at once « DMV »

16   to report the car as stolen.

17   **43.** Having still no news from « PROGRESSIVE » since he filed his claim, Plaintiff went at once to the

18   office of his insurance agent, « D&R », to ask Shawn ROSE if he can fax to « PROGRESSIVE » a

19   copy of the CHP report. Shawn ROSE called the claim representative, Scott KWIERAN, who

20   wanted to talk to Plaintiff. When Laurent GRANIER took the phone, Scott KWIERAN, maliciously,

21   asked to record the conversation, and Plaintiff agreed of course. Later, Scott KWIERAN explained

22   he had yet recovered the car, and indeed, according only his words, but with no proof, it was not

23   stolen but so-called « moved » by « AAA ». Plaintiff asked him a proof, a written proof of what he

24   was saying, about his kind of « investigation », with all names of responsibles of the theft, and by the

25   same time, remembering him the definition of a « Theft ». Scott KWIERAN refused to give any

26   document, any proof, any testimony which can show that the author, the orderer and the organizer of

27   the theft was indeed CJ. LUCAS, and which can put several persons in a tricky situation regarding

28   the numerous criminal offenses they committed together, from Jack LADD and Lyle WOLLERT to

1    the high responsibles of « AAA Southern California », and not only their kind of insurance company.

2    **44.** As Plaintiff was continuing to ask Scott KWIERAN, proof of his declaration about his wannabe
3    recovery, the copy of the phone conversation record and to report his dicovery to police, Scott
4    KWIERAN was continuing to do a deliberate obstruction of justice by dissimulating, erasing the
5    proofs regarding the committed criminal and federal offenses, in order to protect the real authors, CJ.
6    LUCAS and other hidden persons, with the active, essential and main complicity of Jack LADD and
7    Lyle WOLLERT.

8    **45.** Plaintiff recalled Scott KWIERAN that first, the car had been stolen, and so, Scott KWIERAN had
9    to call Police to come to check the vehicle to report it as recovered, and second, « PROGRESSIVE »
10   had to pick it up in order to check if something had been stolen, damaged or changed, and so to pay
11   for it. Scott KWIERAN refused to do his duty, as his manager, James ROBBINS who took the relay
12   of the claim, to organize everything against his client, Plaintiff, but for all the benfits of the adverse
13   party, by erasing all proofs of the criminal and federal offenses, and even by creating a new fake
14   story based on lies and omissions of what happenned. Indeed, James ROBBINS tried to put all the
15   responsibility of the theft to Plaintiff, by asking him to take his car which was, according him, 50
16   miles away of Santa Cruz.

17   **46.** In addition, nothing proved that the car has been really recovered, meaning if it was the real
18   Plaintiff's car. And the day when the present complaint is written, Plaintiff still does not know.

19   **47.** Plaintiff went to « Department of Motor Vehicles », the 04th of november 2014 in order to get a
20   document about the situation of his stolen car, and he got it.

21   **48.** Later, Plaintiff went to his address in Santa Cruz to pick up his mails since a while. He discovered
22   that Jack LADD sent him a mail from SAN JOSE (!), the 31st of october 2014, containing a fake
23   invoice, made with a computer, with no sign, asking Plaintiff to pay the tow and the storage for a
24   total amount of $1,375.00, and attached, a letter explaining he put a lien on Plaintiff's vehicle for an
25   invoice edited the same day, and the document about the pending lien at « DMV » registered by
26   James PETTIT, for a vehicle under the value of $4,000.00, which is not true because Plaintiff's car,
27   even accidented is worth than this amount.

28   **49.** When Plaintiff has had this mail, he understood at once, that Jack LADD was erasing all evidences

1    about his numerous offenses, criminal and federal ones, like his real invoice of $1,750.00 written by

2    his hand, and paid by the famous « unknown man » who « picked up » Plaintiff's car.

3    **50.** By all this time, Plaintiff was not sure that, indeed, Jack LADD had not stolen the car for himself,

4    because his story with an unkown and unidentified person was very strange and unusual.

5    **51.** But, by the fact that Jack LADD was trying to get the ownership of Plaintiff's car by cheating and

6    using a fake invoice, a false declaration and lies, Plaintiff understood that he was, indeed, the final

7    material beneficiary of the theft, the car itself, when the CJ. LUCAS and her accomplices were the

8    virtual beneficiaries, the dissimulation of the material proof, for all benefits of the insurance

9    company and their highest responsibles.

10    **52.** With this letter, Plaintiff had the proof that his car had been stolen by Jack LADD, and so, Plaintiff

11    wanted to declare to authorities the authors's name of the theft. Plaintiff was in Los Angeles since the

12    following weekend, and so, he went to a CHP office, the one loacted at Woodland Hills.

13    **53.** The officer at the desk told to Plaintiff that his car was not declared as stolen, and worse, the report

14    for which Plaintiff had the number and a copy, was erased from CHP records. The officer did not

15    want to write a report from Plaintifff about the author's name of the theft, and just told to Laurent

16    GRANIER to call Santa Cruz CHP office located in Aptos.

17    **54.** Laurent GRANIER called this CHP office in Aptos, and the officer SHARP told him that the claim

18    representative of his insurance had called them, and asked them to erase the file about the theft, as if

19    nothing happened. Facing Plaintiff's contesting about their misconducts, officer SHARP only replied

20    by advising Plaintiff to call his insurance. That's it.

21    **55.** Plaintiff understood the reason of the corruption of the persons of this CHP, because they work more

22    than they have the right with Ladd's towing company...

23    **56.** Plaintiff knew that, in any case, none officer should accept to commit the offense of erasing a file,

24    and let alone by phone, from a guy who is not the owner, who is not the plaintiff, and without any

25    proof as, at least, a fax letter. Normally, the officer had to ask and to advise the person who called

26    them to call the local police where was the car, in order to make the process of recovery at the

27    location where it was. It is the Law for any robbery, when the thing is recovered, even by its owner,

28    anyone has first, before to touch it and to take it, to call police in order they come, check and write a

1    report, and too, they declare to « DMV » the car as recovered. In addition, according the claim
2    manager, James ROBBINS, and the claim representative, Scott KWIERAN, the car was at 50 miles
3    from where it has been stolen, in another county, and so, far away from the jurisdiction of this CHP
4    office located in Santa Cruz County.

5    **57.** Plaintiff saw that James ROBBINS and Scott KWIERAN, working at « PROGRESSIVE », were
6    able to commit serious offenses by erasing all proofs of the criminals and federal offenses committed
7    by persons they have not to take care of, so, for the benefit of the insurance company of the adverse
8    party, and against the interest of their own client, Plaintiff himself.

9    **58.** « *Strange*?! » , « *Nonsense* ?! », thought Plaintiff. Indeed, he discovered it was rather quite the
10   opposite, because insurance companies do not care of their client, prefering to take care of the other
11   insurance companies because they are not indeed, competitors, despite the other fields of businesses,
12   but partners because they have to deal together all the time, for all claims, for all litigations. A kind
13   of secret non-agression pact useful to have an easier way to deal, despite the interest of clients and
14   victims. And, perhaps, helping to solve this tricky problem, even against the interest of their own
15   client, Plaintiff, it can be useful for « PROGRESSIVE » to solve another case where they are at fault
16   against « AAA ». Otherwise, Plaintiff understood that it was pretty sure that « PROGRESSIVE »
17   commits the same bad and unlawful acts that the so-called « AAA » did against Plaintiff, as a
18   common practice. In addition, to have this file in hands can help « PROGRESSIVE » in the future to
19   get power on « AAA » in another tricky case where they'll have to pay.

20   **59.** For this reason, Plaintiff investigated and discovered the link, between « PROGRESSIVE » and the
21   so-called « AAA » insurance, with the one of the Northern California branch. They have the same
22   « Agent for Service », the same official registered person who represents legally each company,
23   Nancy FLORES. Plaintiff got the reason of the collusion of both insurance companies which acted
24   together as one against his interest, despite the essential fact that Plaintiff was only a victim.

25   **60.** By another way, Laurent GRANIER tried to get help from « AAA NORTHEN California », the auto
26   club from where he is member, by denouncing the unlawful acts and professional misconducts of
27   Jack LADD and Lyle WOLLERT, being agreed by « AAA », and for which Plaintiff had trust in
28   them. Tom HAINES, Regional Manager Automotive Services at « AAA Northern California,

1    Nevada & Utah », who has the responsibility to grant agreement to tow companies, claimed a fake

2    argument to do nothing against Jack LADD and Lyle WOLLERT, despite their criminal offenses and

3    their disrespect for their professional obligations, and so, he did nothing in order not to trouble them,

4    and « AAA Southern California ».

5    **61.** Since this date, Laurent GRANIER got all proofs about all offenses, and understood all the story

6    explaining the absurd and illogical behaviour of James ROBBINS and Scott KWIERAN, and Tom

7    HAINES.

8                              **Statement of facts regarding the present complaint.**

9    **62.** Plaintiff, victim of a car accident in the course of which he missed to be killed, or very seriously

10   injured, was safe thanks to his good reflexe and his lucky star, but he lost his car, a part of data of

11   his laptop, money, time, energy, health, and opportunities. The insurance company which had to

12   reduce his problems, his troubles, the one of the adverse party because 100% responsible, took

13   advantage on him by increasing them, and even by creating new ones from criminal behaviours.

14   **63.** By the time that Plaintiff took the ambulance to go to hospital, his car has been towed and kept by

15   Jack LADD and Lyle WOLLERT, « AAA » agreed.

16   **64.** The 28th of october 2014, being victim of numerous criminal offenses like the absurd and unlawful

17   existence of a lump sum, a fixed budget for any claim, even for victims of their clients, so for

18   victims who are not their client, Laurent GRANIER filed a complaint against the so-called insurance

19   company « CAA », which is indeed a fake name for « INTERINSURANCE EXCHANGE OF THE

20   AUTOMOBILE CLUB » which is the insurance company of «AAA SOUTHERN CALIFORNIA»,

21   and against several of its responsibles, and especially against the claim manager CJ. LUCAS and her

22   manager, Cynthia VELASCO.

23   **65.** CJ. LUCAS and Cynthia VELASCO knew since several days that Plaintiff was going to file a

24   complaint against them, and they could not screw him easily, and so, they will have to pay the right

25   price, above her unlawful lump sum.

26   **66.** CJ. LUCAS organized the theft of the Plaintiff's car, in measure of reprisals according her prior

27   blackmails and for the fact to be sued, and above all, in order to erase all proofs about her criminal

28   offenses by avoiding a counter expertise by Plaintiff of his own car, which should be harmful on

1    three ways. First, about the property damage by the fact to be obliged to pay the real price, the

2    replacement value of the car ; second, about the body injury by the fact to be obliged to recognize

3    the violence of the impact and so the serious nature of the body injury, and third, about the lawsuit

4    filed by Plaintiff, to be convicted of all criminal offenses.

5    **67.** To succeed in her criminal act, CJ. LUCAS has had the help, the assistance and the essential

6    complicity of Jack LADD and Lyle WOLLERT, who are in the « AAA » family.

7    **68.** CJ. LUCAS ordered Jack LADD and Lyle WOLLERT to steal the car, and to deliver it to a so-called

8    unknown, unidentifed person who picked it up.

9    **69.** The 28th of october 2014, the theft is committed and the stolen car is delivered to the unknown

10    person, in exchange for an extra payment of an arranged and round amount of $1,750.00, which has

11    been paid by the same unknown person the day where he was receiving the stolen goods, according

12    Jack LADD's handwritten invoice edited to Plaintiff's name with a fake address (Sunnyvale).

13    **70.** The 29th of october 2014, Plaintiff discovered that his car has been stolen by going to Ladd's office,

14    and Jack LADD gave him a copy of the paid invoice.

15    **71.** The 29th of october 2014, at once following his discovery, Plaintiff went to Sheriff's office in Felton,

16    where Jack LADD and Lyle WOLLERT have their company, in order to report the theft.

17    **72.** Ryan YORK, deputy of the Sheriff Phil WOWAK, following the fake declarations, lies, advises and

18    orders of Jack LADD, refused to write a report about the theft asked by Plaintiff.

19    **73.** The 30th of october 2014, Plaintiff filed a civil complaint against Jack LADD and Lyle WOLLERT

20    for their first criminal offenses, and against Ryan YORK for corruption.

21    **74.** The 30th of october 2014, Plaintiff filed a claim to his insurance company, « PROGRESSIVE ».

22    **75.** The 31st of october 2014, a summons about the civil lawsuit is served to Lyle WOLLERT.

23    **76.** The 31st of october 2014, in order to erase his own criminal offense about the theft of Plaintiff's car,

24    to erase his federal offense to have taken money from an unknown on the name of another one

25    without his knowledge nor his agreement, Jack LADD started a procedure to take the official

26    ownership of the stolen car by registering a lien on Plaintiff's car, thanks to the complicity of an

27    agent, James PETTIT, and the ease and wrongful process offered by « DMV » to crooks who can

28    register any lien on any car without real proof, and so, giving means to crooks strong means for

1    blackmails.

2    **77.** The 31st of october 2014, a normal mail is sent from San Jose by USPS to Plaintiff by a so-called

3    LADD which contained a letter, an invoice dated of the same day about the tow and the storarge of

4    Plaintiff's car for a total sum of $1,375.00, and the notice of a pending lien on Plaintiff's car title,

5    registered at « DMV » by the agent, James PETTIT.

6    **78.** The 03rd of november 2014, Plaintiff went to California Highway Patrol (CHP) located in Aptos –

7    Santa Cruz County-, in order to report the theft of his car. The officer filed the report (S-326720-14)

8    and called « DMV » to report the theft.

9    **79.** The 03rd of november 2014, Plaintiff went to his insurance agent in Santa Cruz, D&R, and gave to

10    them a copy of the CHP report, asking to transmit it to « PROGRESSIVE ».

11    **80.** Claim representative, Scott KWIERAN revealed by phone that he found the car, but without proof,

12    taking care to consider it as never stolen.

13    **81.** The 04th of november 2014, Plaintiff got from « DMV » an official document about the situation of

14    his car reported as stolen.

15    **82.** Plaintiff filed online several complaints to California Department of Insurance (CDI), each of them

16    for different criminal offenses committed by the so-called insurance company « AAA » of Southern

17    California, which its real name is « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE

18    CLUB », but instead to investigate, this agency sent several mails to Plaintiff, with no information

19    about each complaint, but just saying that they do not anything since Plaintiff filed a civil complaint

20    at a court. Plaintiff was doing the job of « CDI », when offenses were criminal and so, had to be sued

21    as is by « CDI » itself, according their official duty on insurance companies.

22    **83.** During several days, Scott KWIERAN and his manager, James ROBBINS tried to oblige Plaintiff to

23    take his car from the location where it was located, according themselves only, with no proof that the

24    car was really there, and even it was really Plaintiff's car.

25    **84.** James ROBBINS and Scott KWIERAN refused, despite the numerous official formal requests from

26    Plaintiff, to give him the proofs of the recovery of his car, and the final report about their so-called

27    investigation, which could reveal officially the involvement and the criminal acts committed by CJ.

28    LUCAS and several other persons.

85. James ROBBINS and Scott KWIERAN took care of the interest of the so-called insurance company « AAA », CJ. LUCAS, Cynthia VELASCO, Jack LADD, Lyle WOLLERT, and all persons who took part and committed criminal offenses, but did not take care at all, of the interest of their own client, Plaintiff, quite the opposite, because they caused to him more damages, property and health, committing themselves several criminal and federal offenses.

86. James ROBBINS and Scott KWIERAN did not call the police where the car was recovered, but the « CHP » office located in Aptos, where Plaintiff filed the report about the theft of his car.

87. James ROBBINS and Scott KWIERAN erased all proofs, all evidences about the criminal and federal offenses committed by Jack LADD, Lyle WOLLERT, CJ.LUCAS, and the other accomplices.

88. James ROBBINS and Scott KWIERAN asked to the « CHP Aptos » police officer to erase their report from their records, and to remove the car as stolen from DMV.

89. « CHP Aptos » Police officer erased the report « S-326720-14 » from records and removed the car as stolen from « DMV », without any official document, any proof.

90. « CHP Aptos » Police officer acted against the Law by the fact that it is up to the jurisdiction of the police station where the car is recovered to do the report of recovery.

91. « CHP Aptos » Police officer erased the criminal and federal offenses committed by Jack LADD and Lyle WOLLERT, with whom policer officers of this police station are very close, and for whom they call their tow company each time they can, and more than the Law gives them the right to do it.

92. Plaintiff discovered that people from the insurance company so-called « PROGRESSIVE », are using the same kind of trickery and fraud than « AAA » about the use of fake names for their companies.

93. Plaintiff paid indeed a company named « DRIVE », but he discovered that « DRIVE » does not exist in the record of « California Department of Insurance », and it has its address in Illinois, when about general inquiries, its address is in Ohio.

94. By searching in « California Department of Insurance » database, Plaintiff found « PROGRESSIVE WEST INSURANCE COMPANY ». But, this company is not a California company, and is located in Ohio. « PROGRESSIVE WEST INSURANCE COMPANY » is not registered as company in

1    California, but has only an official declared Agent for Service named Nancy FLORES.

2  **95.** Plaintiff discovered the link which explains the collusion between people from « PROGRESSIVE »

3    with people from « AAA » (by the one of Northern California branch), by the fact they have the

4    same official declared Agent for Service, Nancy FLORES.

5  **96.** Plaintiff discovered that this insurance company is committing serious offenses about tax and

6    registration, and so, he filed a complaint at « California Department of Insurance », which did

7    nothing. Instead to investigate on the serious allegations from Plaintiff, this agency sent one letter for

8    all of them to Plaintiff, with no information about each complaint, but just saying that they do not

9    anything since Plaintiff filed a civil complaint at a court. Plaintiff was doing the job of « CDI »,

10    when offenses were criminal and so, had to be sued as is by « CDI » itself, according their official

11    duty on insurance companies.

12  **97.** Otherwise, Plaintiff discovered that Tom HAINES, Regional Manager Automotive Services at

13    « AAA Northern California, Nevada & Utah », who has the responsibility to grant agreement to tow

14    companies, was protecting Jack LADD and Lyle WOLLERT by doing absolutely nothing about their

15    criminal offenses, their professional misconducts, because they could reveal everything, everyone,

16    and so, they could put in a tricky situation CJ. LUCAS, Cynthia VELASCO and several other

17    persons of « AAA Southern California », and also few otherinvolved persons.

18  **98.** The 11th of november 2014, Cynthia DRAGER, « AAA » claim representative about body injury,

19    under the reponsibility of her manager, Bob Jorgenson, declared by email to Plaintiff that she was

20    handling the property claim too. This is not an usual way, and so she was using a blackmail,

21    associating the payment of body injury expenses under the settlement of the property damages, for

22    which she knew a complaint was filed. Again, Plaintiff was under another double blackmail because

23    she did not want to pay any bill about his body injuries before his total recovery, even medical ones,

24    even the ones paid in advance by Plaintiff. Plaintiff understood that this unfair and unlawful

25    behaviour against him, victim, was indeed a way to force victims to declare the end of their pains, of

26    their injuries, not because they ended, but because victims needed money to pay their medical

27    expenses, or to be repaid for their advance payment. So, Plaintiff became their « banker » by paying

28    in advance expenses for a case where he was victim, and for which he was under the blackmail to be

1    forced to declare as soon as he can the termination of his body injury claim, according his own
2    financial means, and not his real recovery.

3    **99.** For summary of the collusion and corruption network, James ROBBINS, Scott KWIERAN and
4    « PROGRESSIVE » are protecting and helping CJ. LUCAS and Cynthia VELASCO, and so, « AAA
5    Southern California » and « AAA », who are protected by Jack LADD and Lyle WOLLERT ;
6    « AAA » by its branch « AAA Northern California », « CHP Aptos » and Santa Cruz County's
7    Sheriff are protecting Jack LADD and Lyle WOLLERT, as well they are protecting themselves
8    reciprocally.

9    **100.**      Each defendant did not respect the duty they have according the Law, and is fully
10   responsible of each act committed against Plaintiff which caused to him more and new financial and
11   health damages.

12   **101.**      Yet victim of a car accident, Plaintiff suffered of more stress, more anxiety, more worries,
13   which led to serious troubles in his private and professional life, missing great opportunities,
14   delaying and/or aborting several of his projects, in process and/or in development, being inventor,
15   master philosopher, writer, theoretician, designer, being the author of 25 patents, and around 40
16   copyrights.

17   **102.**      Plaintiff has been disturbed in his mind, his main tool, by his own concrete problems caused
18   by the insurance companies.

19   **103.**      Plaintiff has been disturbed in his spirit by the external problems caused by the numerous
20   criminal acts against moral sense, committed with complete impunity, against which he has had to
21   face, as any honest man has to do, to fight, to denounce.

22   **6. CLAIMS.**

23                                    **Introduction before Claims**

24   28 U.S. Code § 1331 - Federal question : « *The district courts shall have original jurisdiction of all*
25   *civil actions arising under the Constitution, laws, or treaties of the United States.* ».

26   **1.** The Origin of Federal Civil Rights Laws came from the period immediately following the Civil War.
27   Civil Rights legislation was originally enacted by Congress, based upon its power under the
28   Thirteenth and Fourteenth Amendments to pass laws to enforce these rights.

2. The first two of these laws were based upon the CIVIL RIGHTS ACT of 1866 (42 U.S.C.A. § 1982), which had preceded the Fourteenth Amendment. The first Civil Rights law guaranteed *equal rights* under the law for all people who lived within the jurisdiction of the United States. The second guaranteed each citizen an equal right to own, inherit, rent, purchase, and sell real property as well as personal property. The third original civil rights law, the Ku Klux Klan Act of 1871 (17 Stat. 13), provided citizens with the right to bring a civil action for a violation of protected rights. The fourth law made violation of such rights a criminal offense.

3. "Civil liberties" concern basic rights and freedoms that are guaranteed -- either explicitly identified in the Bill of Rights and the Constitution, or interpreted through the years by courts and lawmakers. Civil liberties include, Freedom of speech, the right to privacy, the right to a fair court trial.

4. The present complaint is about, but not limited, the following laws of United States :

    18 U.S. Code § 201 - Bribery of public officials and witnesses

    18 U.S. Code § 241 - Conspiracy against rights

    18 U.S. Code § 242 - Deprivation of rights under color of law

    18 U.S. Code § 873 – Blackmail

    18 U.S. Code § 1506 - Theft or alteration of record or process; false bail

    18 U.S. Code § 1510 - Obstruction of criminal investigations

    18 U.S. Code § 1621 - Perjury generally

    18 U.S. Code § 1623 - False declarations before grand jury or court

    18 U.S. Code § 2312 - Transportation of stolen vehicles

    18 U.S. Code § 2313 - Sale or receipt of stolen vehicles

    18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys,...

    18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle parts

    31 CFR 561.310 - Money laundering

    36 CFR 1275.44 - Rights and privileges; right to a fair trial.

    42 U.S. Code § 1981 - Equal rights under the law

    42 U.S. Code § 1982 - Property rights of citizens

    42 U.S. Code § 1983 - Civil action for deprivation of rights

1       42 U.S. Code § 1985 - Conspiracy to interfere with civil rights

2       42 U.S. Code § 1986 - Action for neglect to prevent

3       42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury

4   **6.** Nota Bene about 42 U.S. Code § 1982 - Property rights of citizens :

5       All rights about property are given to owner, by United States Law. Even it is not exactly specified,

6       these rights include the nature associated with an ownership, as the right for an owner of his own full

7       disposal of the property, of his own total freedom to use it, to keep it, to move it, to do everything

8       with it. And so, a steal is violation of this fundamental right about property. If we can accept that a

9       normal theft is under the local, state laws, because a normal theft is not targetted on the person who

10      gets the property, but on the value of the property itself, we can not disagree that the present

11      complaint is about a targetted theft, in order to steal an evidence from Plaintiff, to inflict stress and

12      emotional pains on Plaintiff, to get power and obtain a negocation against Plaintiff's interest and will,

13      to create damages on Plaintiff as a punishment, and so, the main and alone purpose of the people

14      who have ordered and committed the theft is not about the value of the property itself, but about the

15      owner, Plaintiff. So, this kind of theft is under the Civil Rights of 42 U.S. Code § 1982.

16  **7.** Nota Bene about 18 U.S. Code § 2312, 18 U.S. Code § 2313, 18 U.S. Code § 2315, 18 U.S. Code §

17      2321 :

18      If those federal laws are specifically under the condition of cross-border, we can accept that the only

19      fact of the intentionality of criminals to do it as is, is acceptable, and so those laws apply. Indeed, the

20      object, a collector car, is not a common car, and the trafficking of this kind of cars, and more, parts

21      of this kind of cars, is mainly done cross-border, interstate. We can see that the real intent was to sell

22      the car, or its parts, trough an auction house, COPART. But COPART is not a common, a normal

23      local auction house. COPART is a nationwide company located in Dallas (Texas), selling more than

24      1 million cars yearly, via more than 160 physical locations across several countries. If their physical

25      act on Plaintiff's stolen car did not yet cross any state boundary or country border, it is only because

26      Plaintiff succeeded to stop their criminal undertaking on time. In addition, COPART does propose

27      auction online, and so, the factor of interstate, even international, is confirmed. Otherwise, the factor

28      about the travel of the benefit, of the money pulled out from the offense, from the theft. Companies

1    like « AAA » and « PROGRESSIVE » are nationwide, and so, the loot, money from the object itself,

2    and money saved from the origin of the theft (theft of evidence) is about interstate companies

3    benefits. We can add the fact that those companies have investors who are not located in California,

4    and making money from those unlawful practices. So, by all those points, interstate, cross-border

5    facts are real. So, 18 U.S. Code § 2312, 18 U.S. Code § 2313, 18 U.S. Code § 2315, 18 U.S. Code §

6    2321 laws apply in this case about Plaintiff's complaint.

7    **8.** Nota Bene about the respect for United States :

8    1. Those Civil Rights came from the origin of the United States, not from the Constituion, but earlier,

9    from the Declaration of Independance which was written under the universal genuine spirit of

10   « Common Sense », thanks to Thomas PAINE, who was indeed, the real father of the text of this

11   fundamental declaration, and even the one of Declaration of the Rights of Man and of the Citizen in

12   France, in 1789. A important date for the United States too, for its Constitution.

13   2. Common Sense spirit was so influential that John Adams said, "*Without the pen of the author of*

14   *« Common Sense », the sword of Washington would have been raised in vain.*".

15   3. So, anyone living in United States who acts against what « Common Sense » expresses, is guilty

16   of felony, of a violation of the United States spirit, the one for which The United States of America

17   has been declared and created, the one from which The Constituton has been written, and so, the one

18   for which anyone has to respect carefully.

19   **7.** Nota Bene about Property Rights :

20   There are 3 fundamental Civil Rights : Freedom, Respect and Property.

21   1. Freedom is the Right to anyone to do, to go, to think as he wants and can, which is the freedom to

22   dispose of himself, the self-determination.

23   2. Respect is the Right to anyone, to be considered as human being without regarding the

24   characteristics of the body nor the mind, which are color (skin but also, hair, eyes, etc.), race,

25   religion, origin, etc.

26   3. Property is the Right to anyone to get a property. This is a main right because it is the first after the

27   consideration on person (Freedom and Respect).

28   **8.** Nota Bene about the Right for a fair trial and justice :

1       Among the fundamental Civil Rights, there is one about the right for a fair trial. If this part is about

2       defendants prosecuted for a crime, it is under the common sense and by the « equal rights under the

3       Law » that anyone has the right to access to the judicial system, to obtain justice, compensations for

4       his damages, and so, to get the right for a fair trial as victim. And it is also under the common sense,

5       that victims can obtain the infliction of a punishment to defendants who are guilty of a crime, and so,

6       a stopping of their criminal and unlawful activity.

7                                            **CLAIM 1**

8                                   **ORGANIZED GANG THEFT**

9                                   **Violation of Civil Rights.**

10      36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

11      law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

12                      rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

13      18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of

14      record or process; false bail; 18 U.S. Code § 2312 - Transportation of stolen vehicles; 18 U.S. Code § 2313 -

15      Sale or receipt of stolen vehicles; 18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys,

16      or fraudulent State tax stamps; 18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle

17                      parts; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

18  1.  Regarding Defendants Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO, Perri Noelle

19      MONTGOMERY.

20  2.  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

21      present complaint.

22  3.  Under the order of CJ.LUCAS, who is under the authority of Cynthia VELASCO, the 28th of october

23      2014, Jack LADD and Lyle WOLLERT stole Plaintiff's car which was under their full responsibility.

24  4.  Any person who has the responsibility to keep a property, has to release it only to its owner, or to a

25      person who has the authorization and a document from the owner. None professional has the right to

26      release to anyone, a property for which he has the responsibility to its owner, and it is true without

27      any proof and document, any certificate and proof of identity of the person who requests it, if he is

28      not the owner but an authorized one by the owner. In addition, the responsible has to keep all

1  documents, or at least, copies.

2  5. Jack LADD and Lyle WOLLERT did not do this process because they have stolen Plaintiff's car.

3  6. The theft can occur thanks to the main and essential participation of Jack LADD and Lyle
4  WOLLERT, who had the official charge to keep Plaintiff's car, to protect it.

5  7. Jack LADD and Lyle WOLLERT are the persons without whom this offense would not have been
6  able to occur.

7  8. Jack LADD and Lyle WOLLERT were the persons in whom Plaintiff trusted, and for what he was
8  their client.

9  9. It is not the common case of a car theft which usually happens under the factor of random and fate,
10  like anyone in a street, but a deliberate one, targetted, under the aggravating circumstances of the
11  special criminal purpose to take away an evidence from Plaintiff.

12  10. And above all, Jack LADD and Lyle WOLLERT are the persons who have been called by the
13  authorities, California Highway Patrol, and so, under these other specific responsibilities.

14  11. Because « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » claimed, by their
15  attorney to defend themselves in the lawsuit where Plaintiff is suing them, Steven J. DAWSON, and
16  also by the attorney defending Perri Noelle MONTGOMERY, paid by the insurance company,
17  Richard S. GOWER, the fact that there was no contract, between them and Plaintiff regarding the
18  accident, meaning no obligation to pay him, and also, the fact that employees of
19  « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » have acted only on behalf
20  of Perri Noelle MONTGOMERY, she has to be included in that case. Steven J. DAWSON even
21  dared to use this dishonest argument by using a demurrer in order to be removed from the lawsuit.
22  Indeed, to defend themselves about their criminal acts, « INTERINSURANCE EXCHANGE OF
23  THE AUTOMOBILE CLUB »'s attorneys do not hesitate to put their client in a tricky situation.
24  Anyway, according their attorneys, all acts committed by people of this insurance company, and so
25  the ones against Plaintiff, are for her exclusive benefit, and so, « INTERINSURANCE EXCHANGE
26  OF THE AUTOMOBILE CLUB » confirmed that Perri Noelle MONTGOMERY is accomplice of
27  all their criminal and federal offenses regarding their motive.

28  12. In addition of the violation of several state and federal laws, the acts committed by Jack LADD,

1   WOLLERT, CJ. LUCAS and Cynthia VELASCO together, are a violation of Plaintiff's property

2   rights, not because it was a theft, but because it was a premeditate and organized one, in addition, to

3   have been committed for another purpose than to take the good for its value.

4                               **CLAIM 2**

5                          **RECEIVING STOLEN GOODS**

6                          **Violation of Civil Rights**

7   36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

8   law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

9                      rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

10  18 U.S. Code § 1506 - Theft or alteration of record or process; false bail; 18 U.S. Code § 1510 - Obstruction

11  of criminal investigations; 18 U.S. Code § 2312 - Transportation of stolen vehicles; 18 U.S. Code § 2313 -

12  Sale or receipt of stolen vehicles; 18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys,

13  or fraudulent State tax stamps; 18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle

14                  parts; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury;

15  **1.** Regarding Defendants Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO.

16  **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

17      present complaint.

18  **3.** Under the order of CJ.LUCAS, who is under the authority of Cynthia VELASCO, Jack LADD and

19      Lyle WOLLERT delivered Plaintiff's car they have stolen, to a person sent by CJ. LUCAS. A person

20      still unidentified and unknown by Plaintiff the day when the present complaint is written because

21      Jack LADD and Lyle WOLLERT still claim they don't know.

22  **4.** This unknown person has been sent by CJ.LUCAS in order to take possession of the stolen car,

23      which is the offense of receiving stolen goods.

24  **5.** In addition of the violation of several state and federal laws, the acts committed by CJ. LUCAS and

25      Cynthia VELASCO together, are a double violation of Plaintiff's Civil Rights ; first about his

26      property rights, not only because it was an offense about a common receiving stolen good, but

27      because it was a premeditate and organized one, under the aggravating circumstances of organized

28      group, for a hidden specific criminal purpose to take away an evidence from Plaintiff, which is an

1    obstruction of justice to get a fair trial.

2                              **CLAIM 3**

3                    **IDENTITY THEFT and IMPERSONATION**

4                         **Violation of Civil Rights**

5    36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

6    law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

7              rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

8    18 U.S. Code § 201 - Bribery of public officials and witnesses; 18 U.S. Code § 1506 - Theft or alteration of

9    record or process; false bail; 18 U.S. Code § 1621 - Perjury generally; 18 U.S. Code § 1510 - Obstruction of

10   criminal investigations ; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury;

11   **1.** Regarding Defendants Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO.

12   **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

13        present complaint.

14   **3.** Under the order of CJ.LUCAS, who is under the authority of Cynthia VELASCO, Jack LADD and

15        Lyle WOLLERT delivered Plaintiff's car they have stolen, to a person, still unidentified and

16        unknown by Plaintiff the day when the present complaint is written. This person sent by CJ. LUCAS

17        in order to take possession of the stolen car, which is yet the offense of receiving stolen goods, paid

18        the invoice edited by Jack LADD to the name of Plaintiff, for an arranged and round amount, a lump

19        sum of $1750.

20   **4.** Jack LADD, Lyle WOLLERT, the « unknown person », CJ. LUCAS and Cynthia VELASCO

21        together, used the identity of Plaintiff without his knowledge, against his interest and in a criminal

22        offense.

23   **5.** In addition of the violation of several state and federal laws, Jack LADD, Lyle WOLLERT, the

24        « unknown person », CJ. LUCAS and Cynthia VELASCO committed together a violation of

25        Plaintiff's Civil Rights, and above all, a violation of federal laws concerning financial activities

26        regarding the identity and the track of persons making payment.

27              XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

28              XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

1

**CLAIM 4**

2

**LAUNDERING MONEY**

3

**Violation of Civil Rights**

4 36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

5 law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

6 rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

7 18 U.S. Code § 1510 - Obstruction of criminal investigations ;31 CFR 561.310 - Money laundering; 42 U.S.

8 Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

9   **1.** Regarding Defendants Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO.

10   **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

11     present complaint.

12   **3.** Under the order of CJ.LUCAS, who is under the authority of Cynthia VELASCO, Jack LADD and

13     Lyle WOLLERT edited an invoice on the name of Plaintiff, with a false address, which has been paid

14     in the name of Plaintiff by the unknown and unidentified person who received the stolen goods, the

15     day he picked it up.

16   **4.** Jack LADD and Lyle WOLLERT delivered Plaintiff's car they have stolen, to a person sent by

17     CJ.LUCAS  in exchange of this official payment which served of « official » transaction, but there is

18     no evidence that another payment has not been done in cash.

19   **5.** Jack LADD, Lyle WOLLERT, the « unknown person », CJ. LUCAS and Cynthia VELASCO

20     together, used the identity of Plaintiff without his knowledge, against his interest and in a criminal

21     offense.

22   **6.** In addition of the violation of several state and federal laws, Jack LADD, Lyle WOLLERT, the

23     « unknown person », CJ. LUCAS and Cynthia VELASCO committed together a violation of

24     Plaintiff's Civil Rights, and above all, a violation of federal laws concerning financial activities

25     regarding the identification and the track of funds and payments.

26           XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

27           XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

28           XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

# CLAIM 5

## THEFT OF EVIDENCE

### Violation of Civil Rights

36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

18 U.S. Code § 1506 - Theft or alteration of record or process; false bail; 18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1621 - Perjury generally; 18 U.S. Code § 2312 - Transportation of stolen vehicles; 18 U.S. Code § 2313 - Sale or receipt of stolen vehicles; 18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps; 18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle parts; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

1. Regarding Defendants Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO, Perri Noelle MONTGOMERY.

2. Plaintiff re-alleges herein by this reference each and every allegation previously contained in the present complaint.

3. Under the order of CJ.LUCAS, who is under the authority of Cynthia VELASCO, Jack LADD and Lyle WOLLERT stole and delivered Plaintiff's car which was, indeed, the only one evidence for Plaintiff about the nature of his accident, and so, his damages.

4. Plaintiff's car was the only one evidence for Plaintiff to prove the value of his property and his damages about which there is a litigation with CJ. LUCAS and Cynthia VELASCO, for which « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » has to pay Plaintiff.

5. Plaintiff's car was also the only one evidence able to show the violence of the impact, the seriousness of the accident, so, the only one evidence for Plaintiff to demonstrate, explain and prove the nature and the seriousness and of his body injuries, being impossible to see by any medical equipement (whiplash, back and neck pains, headache), and so, the value of his body injuries and the damages caused by these body injuries for which « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » has to pay to Plaintiff.

6. In addition, Plaintiff's car is the main evidence for the criminal offenses committed previously by CJ. LUCAS and Cynthia VELASCO, persons against whom Plaintiff had yet filed a complaint the 28th of october 2014.

7. Because « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » claimed, by their attorney to defend themselves in the lawsuit where Plaintiff is suing them, Steven J. DAWSON, and also by the attorney defending Perri Noelle MONTGOMERY, paid by the insurance company, Richard S. GOWER, the fact that there was no contract, between them and Plaintiff regarding the accident, meaning no obligation to pay him, and also, the fact that employees of « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » have acted only on behalf of Perri Noelle MONTGOMERY, she has to be included in that case. Steven J. DAWSON even dared to use this dishonest argument by using a demurrer in order to be removed from the lawsuit. Indeed, to defend themselves about their criminal acts, « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »'s attorneys do not hesitate to put their client in a tricky situation. Anyway, according their attorneys, all acts committed by people of this insurance company, and so the ones against Plaintiff, are for her exclusive benefit, and so, « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » confirmed that Perri Noelle MONTGOMERY is accomplice of all their criminal and federal offenses regarding their motive.

8. In addition of the violation of several state and federal laws, Jack LADD, Lyle WOLLERT, CJ. LUCAS and Cynthia VELASCO together, committed a triple violation of Plaintiff's Civil Rights, first regarding his right to have access and to obtain justice by getting a fair trial with a real evidence, which is otherwise his property, second regarding his right to obtain and to get payment for his damages, and third, regarding the fact he was facing a deliberate obstruction of justice under the aggravating circumstances of premeditate and organized one, committed by an organized group, for a hidden specific criminal purpose.

**CLAIM 6**

**FAKE DECLARATIONS, LIES AND PERJURY TO AN OFFICIAL AGENCY**

**Violation of Civil Rights**

36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

1  law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

2  rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

3  18 U.S. Code § 873 – Blackmail; 18 U.S. Code § 1506 - Theft or alteration of record or process; false bail;

4  18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1621 - Perjury generally; 18

5  U.S. Code § 2312 - Transportation of stolen vehicles; 18 U.S. Code § 2313 - Sale or receipt of stolen

6  vehicles; 18 U.S. Code § 2315 - Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax

7  stamps; 18 U.S. Code § 2321 - Trafficking in certain motor vehicles or motor vehicle parts; 42 U.S. Code §

8  1986 - Action for neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial

9  by jury.

10  **1.**  Regarding Defendants Jack LADD, James PETTIT, Jean M. SHIOMOTO, « Department of Motor

11      Vehicles of California ».

12  **2.**  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

13      present complaint.

14  **3.**  Jack LADD edited a fake invoice the 31st of october 2014 to the name of Plaintiff, in order to erase

15      all proofs of his prior criminal offenses and his violations of federal laws.

16  **4.**  Jack LADD used the service of an agent, James PETTIT, to register at « DMV » a lien on the title of

17      Plaintiff's car.

18  **5.**  The useful of his lien was to make official his fake invoice, which had several associated dishonest

19      purposes : to erase the real prior one which was the evidence of a double serious violation of federal

20      laws, to erase the theft by making official a fake delivery of the car to Plaintiff instead of CJ.

21      LUCAS's gang, to make official a deal between Plaintiff and Jack LADD by obliging Plaintiff to pay

22      Jack LADD who was yet sued, to take officially the ownership of the stolen car in the case of

23      Plaintiff should refuse to obey to Jack LADD's blackmail to pay his fake invoice which can erase the

24      existence of the theft.

25  **6.**  The « Notice of Pending Loen Sale for Vehicle Valued $4000 or less » registered at DMV by James

26      PETTIT informs a sale of Plaintiff's car for the 02nd of december 2014 at 10:00 AM, as if Jack

27      LADD had still Plaintiff's car. But, by an official mail sent later to Plaintiff, Scott KWIERAN,

28      Claims Investigator at « PROGRESSIVE », and James ROBBINS, his manager, revealed and

1    claimed that the car was located at the company « COPART » in San MARTIN, andd so, according

2    their contact at « AAA », CJ. LUCAS.

7.  Anyway, Plaintiff's car was not anymore in the hands of Jack LADD since the 28th of october 2014,
    so 3 days before his declaration at DMV, as he still got the car. So, his declaration at « DMV » is
    made on perjury.

8.  In addition, the value of Plaintiff's car even accidented, is above $4000, and so the declaration at
    « DMV » is made on another perjury.

9.  Without the help of James PETTIT, the lien based on false allegations, lies and a fake invoice, and
    so, on perjury, would have not been accepted by « DMV », and so, Jack LADD would have no
    means of pressure and blackmail on Plaintiff, and no means to erase the evidences of his criminal
    and federal offenses.

10. Indeed, James PETTIT, known under the name Jim PETTIT, is the owner of a car junkyard based in
    Monterey County, at Seaside(Pettit Jim Auto) and at Moss Landing (Jim Pettit Auto Wreckers),
    being part of the company « Dolan Development Partners », from where he is linked with Willian
    WRIGHT.

11. Otherwise, Jim PETTIT seems to have few arrest records.

12. Indeed, James PETTIT could be the famous « unknown » man who picked up Plaintiff's stolen car,
    who is the link between Jack LADD and CJ. LUCAS in this criminal network, who is the first
    person having committed the offense of receiving stolen goods, who is the person who committed
    the federal offense to pay in the name of Plaintiff the Jack LADD's invoice the day when Plaintiff's
    car left Jack LADD's building, and so, James PETTIT could be involved in several other offenses,
    and present in several other causes of action.

13. Without this easy and improper administrative blind process offered by « Department of Motor
    Vehicles of California », Jack LADD and James PETTIT would have never been able to blackmail
    Plaintiff, and to erase their criminal offenses.

14. « Department of Motor Vehicles of California » is under the authority and the responsibility of
    director Jean M. SHIOMOTO.

15. Plaintiff warned Jean M. SHIOMOTO about this illegal problem and the moral heresy of their unfair

1    process about the registration of lien on title under their responsibility, and yet, about the value of the

2    vehicle which is given by the person who registers and asks for the lien.

3    **16.** Neither « Department of Motor Vehicles of California », nor its director Jean M. SHIOMOTO,

4    contacted directly by Plaintiff via certified mail, did reply, and so, are fully responsible of the

5    unlawful means given by them to criminals.

6    **17.** In addition of the violation of several state and federal laws, Jack LADD and James PETTIT

7    together, with the involvement of « Department of Motor Vehicles of California » and Jean M.

8    SHIOMOTO, committed a triple violation of Plaintiff's Civil Rights, first regarding his right to have

9    access and to obtain justice by getting a fair trial with a real evidence, which is otherwise his

10    property, second regarding his right to obtain and to get payment for his damages, and third,

11    regarding the fact he was facing a deliberate obstruction of justice under the aggravating

12    circumstances of premeditate and organized one, committed by an organized group, for a hidden

13    specific criminal purpose.

14    <center>**CLAIM 7**</center>

15    <center>**CORRUPTION AND OBSTRUCTION OF JUSTICE BY OFFICER HAVING AUTHORITY**</center>

16    <center>**Violation of Civil Rights**</center>

17    36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

18    law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

19    rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

20    18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of

21    record or process; false bail; 18 U.S. Code § 1621 - Perjury generally; 18 U.S. Code § 201 - Bribery of

22    public officials and witnesses; 42 U.S. Code § 1986 - Action for neglect to prevent; 42 U.S. Code § 1995 -

23    Criminal contempt proceedings; penalties; trial by jury.

24    **1.** Regarding Defendants Ryan YORK, Phil WOWAK.

25    **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

26    present complaint.

27    **3.** Ryan YORK is Deputy Sheriff representing Phil WOWAK, Sheriff-Coroner for Santa Cruz County.

28    **4.** Plaintiff met Ryan YORK at Sheriff's office in Felton, the morning of 29th of october 2014, following

1     the discovery of the theft of his car from where it was kept at « LADD'S Auto Body & Towing ».

2   **5.** Despite the fact that Plaintiff insisted to file a report about the theft of his car, Ryan YORK refused

3     to do it, protecting yet Jack LADD and Lyle WOLLERT from prosecution, but also, by forbidding

4     Plaintiff the means to recover his car.

5   **6.** In addition, without a report, the responsibility of the car remained to the owner, Plaintiff, about

6     what can occur to it, and also, what the car can cause to anybody and/or anything. So, a report about

7     the theft was useful and necessary for Plaintiff to put the responsibility of the car on robbers, and

8     above all, on his insurance company, « PROGRESSIVE ».

9   **7.** Without the help from Ryan YORK to the benefit of the gang of robbers, Plaintiff's car would have

10    been recovered at once, and given back to him.

11   **8.** Without the deliberate refusal of Ryan YORK, « PROGRESSIVE » could not refuse to Plaintiff the

12    fact to consider it as stolen, and so, it would have been the object of an expertise to check if

13    something has been stolen, changed, damaged.

14   **9.** Without the deliberate refusal of Ryan YORK, the report would have been the lead and means to

15    search, find and identify the unknown person who picked up the stolen car, who paid under the name

16    of Plaintiff. His identity is important to know because he is the key, the link between Jack LADD

17    and « AAA »'s insurance company, « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE

18    CLUB », between Jack LADD and CJ. LUCAS, and many other persons of the insurance company.

19    His identity is important to know because he is the first link of the organized theft by receiving and

20    moving the stolen goods. His identity is important to know because this person was able to pay

21    instead and under the order of « AAA Southern California » and its insurance company, an invoice

22    edited to Plaintiff's name.

23  **10.** Ryan YORK listened exclusively to the criminal, Jack LADD, but not the victim, Plaintiff.

24  **11.** In addition of Plaintiff's damages, the result of the corruption of Ryan YORK was double, to protect

25    all those people from prosecution, and to block the way and the means for an investigation which

26    would have been able to lead to the dismantling of a network of persons who committed serious

27    criminal acts.

28  **12.** If we can believe, before the complaint filed by Plaintiff the 30th of october 2014 at Superior Court of

1      Santa Cruz, that Phil WOWAK was not involved in the misconduct of his deputy, his following

2      behaviour shows the quite opposite. In full knowledge of the case, he did nothing to repair the

3      problem, as the simple act to take the complaint from Plaintiff. So, he missed to show his good faith,

4      and demonstrates without any doubt that the corruption of his deputy is usual, and approved by him.

5    **13.** In addition of the violation of several state and federal laws, Ryan YORK, under the full

6      responsibility of Phil WOWAK, committed a quadruple violation of Plaintiff's Civil Rights under the

7      aggravating factor that he represents authority ; first regarding his property rights ; second, regarding

8      his right to have access and to obtain justice by getting a fair trial with a real evidence, which is

9      otherwise his property ; third regarding his right to obtain and to get payment for his damage; and

10     fourth, regarding the fact he was facing a deliberate obstruction of justice under the aggravating

11     circumstances of premeditate and organized one, committed by an organized group, for a hidden

12     specific criminal purpose.

13

<center>**CLAIM 8**</center>

14 **FAKE DECLARATION, DISSIMULATION, LIES, PERJURY AND ALTERATION OF THE TRUTH**

15 **IN ORDER TO DELETE AND ERASE EVIDENCES OF CRIMINAL AND FEDERAL OFFENSES**

16 <center>**Violation of Civil Rights**</center>

17   36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

18   law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

19                rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

20   18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of

21   record or process; false bail; 18 U.S. Code § 1621 - Perjury generally; 42 U.S. Code § 1986 - Action for

22    neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

23    **1.**  Regarding Defendants Scott KWIERAN, James ROBBINS, Glenn RENWICK, Chuck JARRET.

24    **2.**  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

25        present complaint.

26    **3.**  Scott KWIERAN, Claims Investigator at « PROGRESSIVE WEST INSURANCE COMPANY »,

27        and James ROBBINS, his manager, betrayed Plaintiff, their client, doing everything against his

28        interest but for the one of the adverse party.

4.  Scott KWIERAN and James ROBBINS helped the insurance company of the adverse party, by making fake declaration, using dissimulations, lies and perjuries, distorting the truth in the goal to hide and erase the criminal and federal offenses committed against Plaintiff by Jack LADD, Lyle WOLLERT, CJ. LUCAS, Cynthia VELASCO, and some other persons not yet identified to this day when the present complaint is written.

5.  Without the management system ordered by Glenn RENWICK, President and Chief Executive Officer of « PROGRESSIVE Insurance », and Chuck JARRET, Chief Legal Officer at « PROGRESSIVE Insurance », Scott KWIERAN and James ROBBINS would have never dared to commit such numerous criminal and federal offenses against Plaintiff.

6.  In addition of the violation of several state and federal laws, Scott KWIERAN and James ROBBINS together, under the authority and the responsibility of Glenn RENWICK and Chuck JARRET, committed a quadruple violation of Plaintiff's Civil Rights under the aggravating factor that they were representing Plaintiff who trusted them ; first regarding his property rights ; second, regarding his right to have access and to obtain justice by getting a fair trial with a real evidence, which is otherwise his property ; third regarding his right to obtain and to get payment for his damage; and fourth, regarding the fact he was facing a deliberate obstruction of justice under the aggravating circumstances of premeditate and organized one, committed by an organized group, for a hidden specific criminal purpose.

<div align="center">

**CLAIM 9**

**FAKE DECLARATION, DISSIMULATION, LIES, PERJURY AND ALTERATION OF THE TRUTH TO AUTHORITIES IN ORDER TO DELETE AND ERASE AN OFFICIAL REPORT**

**Violation of Civil Rights**

</div>

36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

18 U.S. Code § 873 – Blackmail; 18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of record or process; false bail; 18 U.S. Code § 1621 - Perjury generally; 42 U.S. Code § 1986 - Action for neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings;

1          penalties; trial by jury.

2    **1.** Regarding Defendants Scott KWIERAN, James ROBBINS, Glenn RENWICK, Chuck JARRET.

3    **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the
4          present complaint.

5    **3.** Scott KWIERAN, Claims Investigator at « PROGRESSIVE », and James ROBBINS, his manager,
6          betrayed Plaintiff, their client, doing everything against his interest but for the one of the adverse
7          party, for which, they corrupted the police officer responsible of « California Highway Patrol » in
8          the county of Santa Cruz, located at Aptos, in order to delete and erase the report made by Plaintiff
9          about the theft of his car, as nothing happenned, as Plaintiff's car had not been stolen, as Jack LADD
10         and Lyle WOLLERT did not commit any offense, as « AAA », CJ. LUCAS and Cynthia VELASCO
11         did nothing.

12   **4.** Without the management system ordered by Glenn RENWICK, President and Chief Executive
13         Officer of « PROGRESSIVE Insurance », and Chuck JARRET, Chief Legal Officer at
14         « PROGRESSIVE Insurance », Scott KWIERAN and James ROBBINS would have never dared to
15         commit such criminal and federal offenses against Plaintiff.

16   **5.** In addition of the violation of several state and federal laws, Scott KWIERAN and James ROBBINS
17         together, under the authority and the responsibility of Glenn RENWICK and Chuck JARRET,
18         committed a quadruple violation of Plaintiff's Civil Rights under the aggravating factor that he
19         represents authority ; first regarding his property rights ; second, regarding his right to have access
20         and to obtain justice by getting a fair trial with a real evidence, which is otherwise his property ;
21         third regarding his right to obtain and to get payment for his damage; and fourth, regarding the fact
22         he was facing a deliberate obstruction of justice under the aggravating circumstances of premeditate
23         and organized one, committed by an organized group, for a hidden specific criminal purpose.

24                                      **CLAIM 10**

25   **DELETION AND ERASURE OF OFFICIAL REPORT BY PERSON HAVING AUTHORITY**

26                              **Violation of Civil Rights**

27   36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the
28   law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

1          rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

2    18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of

3    record or process; 18 U.S. Code § 1621 - Perjury generally; false bail; 42 U.S. Code § 1986 - Action for

4    neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

5    **1.** Regarding Defendant Paul VINCENT, Joseph A. FARROW, « California Highway Patrol » .

6    **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

7        present complaint.

8    **3.** Paul VINCENT is the captain and higher responsible of « California Highway Patrol » in Santa Cruz

9        County.

10    **4.** The 03rd of november 2014, Plaintiff filed a report for his stolen car at his office located in Aptos. He

11        got a document with a reference of the report (S-326720-14), and got from « DMV », the 04th of

12        november 2014, a document as his car was reported stolen.

13    **5.** Under the order of Scott KWIERAN and James ROBBINS, Paul VINCENT, with no proof about

14        their real identity, their allegations and their authority for such a demand, erased the report and called

15        DMV to erase the fact that the car was stolen.

16    **6.** The deliberate act of deletion and erasure of a criminal report by Paul VINCENT has been

17        committed in order to protect the interest of « PROGRESSIVE Insurance », but above all, the ones

18        of Jack LADD and Lyle WOLLERT, and also « AAA Southern California » and its insurance

19        company.

20    **7.** « CHP Aptos » police officers have interests to protect Jack LADD because police officers of this

21        police station are his « partner », and work more than authorized by Law, with Jack LADD's tow

22        company.

23    **8.** Paul VINCENT was protecting Jack LADD and Lyle WOLLERT from prosecution, but also, was

24        forbidding Plaintiff the means to recover his right and his property.

25    **9.** In addition, without a report, the responsibility of the car remained to the owner, Plaintiff, about

26        what can occur to it, and also, what the car can cause to anybody and/or anything. So, a report about

27        the theft was useful and necessary for Plaintiff to put the responsibility of the car on robbers, and

28        above all, on his insurance company, « PROGRESSIVE ».

1     **10.** Without the help from Paul VINCENT to the benefit of the gang of robbers, Plaintiff's car would
2          have been recovered officially, and given back to him.

3     **11.** Without the deliberate act of deletion and erasure of the criminal report by Paul VINCENT,
4          « PROGRESSIVE » could not refuse to Plaintiff the fact to consider it as stolen, and so, it would
5          have been the object of an expertise to check if something has been stolen, changed, damaged.

6     **12.** Without the deliberate act of deletion and erasure of the criminal report by Paul VINCENT, a
7          criminal investigation would have been the lead and means to search, find and identify the unknown
8          person who picked up the stolen car, who paid under the name of Plaintiff. His identity is important
9          to know because he is the key, the link between Jack LADD and « AAA »'s insurance company,
10         « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB », between Jack LADD and
11         CJ. LUCAS, and many other persons of the insurance company. His identity is important to know
12         because he is the first link of the organized theft by receiving and moving the stolen goods. His
13         identity is important to know because this person was able to pay instead and under the order of
14         « AAA Southern California » and its insurance company, an invoice edited to Plaintiff's name.

15    **13.** The corruption of Paul VINCENT gave a double advantage to all of them, to avoid to pay for their
16         offenses committed against Plaintiff, and to protect all those people from prosecution by blocking
17         the way and the means for an investigation which would have been able to lead to the dismantling of
18         a network of persons who committed serious criminal acts.

19    **14.** In addtion, it would be the way for Plaintiff to recover his property, because, the day when the
20         present complaint is written, he has not his stolen car back, and he has no proof that it has been
21         really found and recovered, because the only ones claiming this fact, Scott KWIERAN and James
22         ROBBINS, never gave, and even refused to give a proof about their allegations, nor respected their
23         normal contractual obligations as insurer to do an expertise, despite the numerous official requests
24         did by Plaintiff to do it.

25    **15.** Paul VINCENT is under the authority and the responsibility of Commissioner Joseph A. FARROW,
26         and « California Highway Patrol » .

27    **16.** In addition of the violation of several state and federal laws, Paul VINCENT committed a quadruple
28         violation of Plaintiff's Civil Rights under the aggravating factor that he represents authority ; first

1    regarding his property rights ; second, regarding his right to have access and to obtain justice by

2    getting a fair trial with a real evidence, which is otherwise his property ; third regarding his right to

3    obtain and to get payment for his damage; and fourth, regarding the fact he was facing a deliberate

4    obstruction of justice under the aggravating circumstances of premeditate and organized one,

5    committed by an organized group, for a hidden specific criminal purpose.

6                                        **CLAIM 11**

7    **RECEIVING OF STOLEN GOODS AND PARTICIPATION IN DESTRUCTION OF EVIDENCE**

8                               **Violation of Civil Rights**

9    36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

10   law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

11                   rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

12   18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 2312 - Transportation of stolen

13   vehicles; 18 U.S. Code § 2313 - Sale or receipt of stolen vehicles; 18 U.S. Code § 2315 - Sale or receipt of

14   stolen goods, securities, moneys, or fraudulent State tax stamps; 18 U.S. Code § 2321 - Trafficking in certain

15   motor vehicles or motor vehicle parts; 42 U.S. Code § 1986 - Action for neglect to prevent; 42 U.S. Code §

16                   1995 - Criminal contempt proceedings; penalties; trial by jury.

17   1.  Regarding Defendants Salvador ORTIZ.

18   2.  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

19       present complaint.

20   3.  According the declaration of Scott KWIERAN, Claims Investigator at « PROGRESSIVE », and

21       James ROBBINS, his manager, the stolen car has been dropped at a company named « COPART »,

22       under the order of CJ. LUCAS, who had ordered and organized the theft.

23   4.  This location is not a common place to store cars, indeed, it is an auction company which sells car

24       anonymously.

25   5.  It is a company which is able to give a virginity to stolen goods, not the recovered one, but the real

26       ones, thanks to their ability and their official means, and above all, their great trading volume, useful

27       to hide this kind of activity.

28   6.  Salvador ORTIZ is the General Manager of « Copart » located at San Martin, County of Santa Clara.

7. Salvador ORTIZ has accepted to take Plaintiff's car under the order of CJ. LUCAS, without any document, without any authorization and certificate provided by its owner, Plaintiff.

8. It is illegal for an auction company to take a car without its title or its document of ownership.

9. Anyone who keeps a stolen property is under the offense of « receiving stolen goods ».

10. Salvador ORTIZ is the last link of a series of organized criminal acts committed against Plaintiff, by an organized gang for specific deliberate illegal purposes, as obstruction of justice by theft, as destruction of evidence in a criminal case for which a civil complaint had been yet filed at a court, as evidence of debt.

11. In addition of the violation of several state and federal laws, Salvador ORTIZ committed a quadruple violation of Plaintiff's Civil Rights under the aggravating factor that he represents a company having administrative obligations ; first regarding his property rights ; second, regarding his right to have access and to obtain justice by getting a fair trial with a real evidence, which is otherwise his property ; third, regarding his right to obtain and to get payment for his damage; and fourth, regarding the fact he was facing a deliberate obstruction of justice under the aggravating circumstances of premeditate and organized one, committed by an organized group, for a hidden specific criminal purpose.

## CLAIM 12

## EXTORTION ATTEMPT AND BLACKMAILS

### Violation of Civil Rights

36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

18 U.S. Code § 873 – Blackmail; 18 U.S. Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of record or process; false bail; 18 U.S. Code § 1621 - Perjury generally; 42 U.S. Code § 1986 - Action for neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

1. Regarding Defendants Cynthia DRAGER, Bob JORGENSON, Chris BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Perri Noelle MONTGOMERY.

1   2.  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the
2       present complaint.

3   3.  Cynthia DRAGER, Claims Service Representative at « INTERINSURANCE EXCHANGE OF THE
4       AUTOMOBILE CLUB », under the order of her manager, Bob JORGENSON, used blackmail
5       against Plaintiff in order to extort a declaration from him, by declaring that she was able to accept to
6       repay the medial expenses already paid in advance by Plaintiff about his body injuries, under the
7       condition that Plaintiff declares the termination of his pains.

8   4.  Cynthia DRAGER, under the order of Bob JORGENSON, used blackmail against Plaintiff in order
9       to extort a declaration from him, by declaring that she was able to accept to repay the medial
10      expenses already paid in advance by Plaintiff about his body injuries, under the condition that
11      Plaintiff declares the recovery from his body injuries.

12  5.  Cynthia DRAGER, under the order of Bob JORGENSON, used blackmail against Plaintiff in order
13      to extort a declaration from him, by declaring that she was able to accept to repay the medial
14      expenses already paid in advance by Plaintiff about his body injuries, under the condition that
15      Plaintiff accepts to solve the litigation about his property damages for which the responsibles of
16      « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » have a fixed predetermined
17      amount, a lump sum for any damage to anyone, for which those persons offered to Plaintiff less than
18      the half of the replacement value of his car, and so that Plaintiff accepts to cancel the complaint he
19      filed against this insurance company and some of its e mployees who committed several criminal
20      offenses.

21  6.  Without the management system ordered by Chris BAGGALEY, Sr VP Insurance Operations at
22      « Automobile Club of Southern California », Robert T. BOUTTIER, Chief Executive Officer,
23      President of « AAA SOUTHERN CALIFORNIA », John F. BOYLE, Executive Vice President of
24      « AAA SOUTHERN CALIFORNIA », and David LANG, Vice President of « AAA SOUTHERN
25      CALIFORNIA », Cynthia DRAGER and Bob JORGENSON would have never dared to commit
26      such criminal and federal offenses against Plaintiff.

27  7.  Otherwise, Plaintiff has had to put Perri Noelle MONTGOMERY in the present complaint because
28      she is at the origin of all troubles suffered by Plaintiff, being 100% responsible of the car accident.

1   Even it is sure she did not take part of all criminal and federal offenses committed by all other
2   defendants, she remains to be the link, the original link between Plaintiff and all of hem. Without this
3   accident, nothing would have happened to Plaintiff, meaning all bad things done by all those other
4   defendants, all criminal acts and behaviours committed against Plaintiff, under a strange wrong
5   purpose to spare Perri Noelle MONTGOMERY too much expenses.

6   **8.** In addition, and above all, Plaintiff has had to put her in the present complaint because « AAA
7   Southern California »'s insurance company, by their dishonest attorney, dared to claim a fake
8   allegation in a lawsuit about what « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE
9   CLUB » does not owe anything to Plaintiff since there is no contract between him and them,
10  meaning they are just to pay for Perri Noelle MONTGOMERY, meaning Plaintiff has to discuss, to
11  negociate and to sue only Perri Noelle MONTGOMERY. Indeed, to avoid to pay what they have to
12  pay, according, not a contract, but indeed an obligation by Law, to a victim of their insurer,
13  « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »'s attorney put their client,
14  Perri Noelle MONTGOMERY, in a tricky situation, and so, they deliberately justify the fact for
15  Plaintiff to put her in the present complaint. Indeed, by another way, the attorney defending Perri
16  Noelle MONTGOMERY, Richard S. GOWER, is paid by her insurance company. Discussing with
17  him, Plaintiff discovered that this person was defending first the interest of « INTERINSURANCE
18  EXCHANGE OF THE AUTOMOBILE CLUB « rather than hers, and he was hidding her some
19  important information, by trying to bypass any other complaint. Indeed, this attorney works for
20  « INTERINSURANCE   EXCHANGE   OF   THE   AUTOMOBILE   CLUB »,   not   for   her.
21  « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » is even able to screw their
22  own client, because they have to erase their criminal and federal offenses, without paying anything
23  of course, to their own victim, Plaintiff. If this attorney was really independent, meaning defending
24  the interest of her client, who is not indeed because she do not pay him, if he was really independent,
25  meaning as any attorney paid by his client himself, this attorney should advise her at once, and
26  before all, to sue « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » for no
27  respect of the contract. And so, aside the fact that people of this insurance company did commit
28  serious offenses on behalf of her. GOWER did not this, but worse, he used blackmail to try to

1    « negociate » with Plaintiff a payment about his property damages with a ridiculous amount of

2    $25,000 for a car of $40,000 value, but above all, it is the kind of deal which could erase all lawsuits

3    against « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB ». GOWER is using

4    Perri Noelle MONTGOMERY to erase, wihtout paying any damage to Plaintiff, criminal and federal

5    offenses committed by people of this insurance company, and so, not at all for her interest. And of

6    course, GOWER used the blackmail to pay body injury medical expenses under the agreement to

7    accept the deal about property damages.

8  **9.** As we are talking about blackmail and extortion attempt about Plaintiff's body injury medical

9    expenses, and as Cynthia DRAGER and Bob JORGENSON are claiming limits on behalf of

10    « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB », and above all, they are

11    refusing to pay each of them at once it is paid by Plaintiff, and so, instead to be paid by Perri Noelle

12    MONTGOMERY, she took part indirectly to the blackmail and the extortion attempt committed by

13    Cynthia DRAGER and Bob JORGENSON on Plaintiff, by taking benefit from these criminal acts.

14  **10.** In addition of the violation of several state and federal laws, Cynthia DRAGER and Bob

15    JORGENSON together, under the authority and the responsibility of Chris BAGGALEY, Robert T.

16    BOUTTIER, John F. BOYLE and David LANG, for an unclear benefit to Perri Noelle

17    MONTGOMERY, committed a triple violation of Plaintiff's Civil Rights under the aggravating

18    factor that he represents a company having contractual and legal obligations ; first regarding his

19    property rights ; second, regarding his right to obtain and to get payment for his damage; and third,

20    regarding the fact he was facing a deliberate obstruction of justice under the aggravating

21    circumstances of premeditate and organized one, committed by an organized group, for a hidden

22    specific criminal purpose.

23                                              **CLAIM 13**

24  **COLLUSION OF ORGANIZED GROUP FOR OBSTRUCTION OF JUSTICE AND ALTERATION**

25  **OF THE TRUTH IN ORDER TO DELETE and ERASE EVIDENCE OF CRIMINAL OFFENSES**

26                                     **Violation of Civil Rights**

27    36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

28    law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

1               rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

2    18 U.S. Code § 873 – Blackmail; 18 U.S. Code § 201 - Bribery of public officials and witnesses; 18 U.S.

3    Code § 1510 - Obstruction of criminal investigations; 18 U.S. Code § 1506 - Theft or alteration of record or

4    process; false bail; 18 U.S. Code § 1621 - Perjury generally; 42 U.S. Code § 1986 - Action for neglect to

5            prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

6    **1.** Regarding Defendants Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK,

7       CJ. LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris

8       BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, « INTERINSURANCE

9       EXCHANGE OF THE AUTOMOBILE CLUB », «AAA SOUTHERN CALIFORNIA», Scott

10      KWIERAN, James ROBBINS, Glenn RENWICK, Chuck JARRET, « PROGRESSIVE WEST

11      INSURANCE COMPANY », Nancy FLORES, Tom HAINES, Paul VINCENT.

12    **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

13       present complaint.

14    **3.** Jack LADD, Lyle WOLLERT, James PETTIT stole the car for the main interest of

15       « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » with which they are linked

16       in an partnership, being « AAA » agreed.

17    **4.** If Plaintiff's car was really recovered by Scott KWIERAN and James ROBBINS, if it was the real

18       one, if it was in the same condition than before the theft, meaning with no stolen, changed or

19       damaged parts, « PROGRESSIVE » insurance would have nothing to fear by respecting its contract

20       and to make an expertise, because it would have nothing to pay to Plaintiff, and so, neither Scott

21       KWIERAN nor James ROBBINS would have no reason to refuse to consider it as stolen.

22    **5.** But, Scott KWIERAN and James ROBBINS refused to tell and admit the truth, they refused to

23       consider it as stolen, and so, they worked hard to change, to distort the truth by omitting important

24       facts, by lying, by withholding information, documents and proofs, by erasing, deleting evidence of

25       federal and criminal offenses. And worse, indeed, they did everything against the interest of their

26       own client, Plaintiff.

27    **6.** Scott KWIERAN and James ROBBINS committed together several criminal and federal offenses,

28       they insisted to make a fake declaration under perjuries, lies and omissions, in order not to consider

1    Plaintiff's car as stolen, and so, for no reason about the interest of their company,
2    « PROGRESSIVE ».

3    7. Scott KWIERAN and James ROBBINS did everything to hide, to delete, to erase all the criminal
4       offenses committed by CJ. LUCAS and Cynthia VELASCO, in order to protect the interest of the
5       insurance company of the adverse party, « INTERINSURANCE EXCHANGE OF THE
6       AUTOMOBILE CLUB ».

7    8. The reason why people from « PROGRESSIVE » and « AAA » insurance companies protect each
8       other, is because they work together all year long, by dealing claims, and also, because they have
9       some hidden common points. And among them, both share the same agent for service in California,
10      Nancy FLORES (about « AAA Northern California »'s insurance company).

11   9. It is interesting to notice that the official person representing « INTERINSURANCE EXCHANGE
12      OF THE AUTOMOBILE CLUB », GAIL LOUIS, as the Agent for Service registered at « California
13      Department of Insurance », is indeed a « ghost», a person impossible to find, despite the fact he has
14      the obligation by Law to be reachable anytime. California Law requests a declared official « Agent
15      For Service » for any company, and so, for insurance company, in order to have the right to practice
16      business in the State.

17   10. A private process server sent by Plaintiff, did not succeed to find this person at the address of Costa
18      Mesa, the one registered at « CDI », « 3333 FAIRVIEW ROAD, A451 ».

19   11. Plaintiff has used too, the service of the local Sheriff's office (Orange County) to serve him
20      summons, and the company he represents, « INTERINSURANCE EXCHANGE OF THE
21      AUTOMOBILE CLUB ». Despite his 3 attempts, Sheriff failed, as he failed too, for the company
22      itself.

23   12. GAIL LOUIS and « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » by their
24      responsibles are committing unlawful acts, a fraud, and the registration of this company is based on
25      fake information, and has to be crossed off.

26   13. It is up to « California Department of Insurance », and its commissioner, Dave JONES, by their duty,
27      to make the regulation and take sanctions against insurance company committing fraud, misconduct
28      and criminal/federal offense.

1    **14.** It is up to « California Department of Insurance » and Dave JONES to investigate and to act against

2    this company and its responsibles, on civil, administrative and criminal ways, because at this level of

3    offenses, it is matter of fraud.

4    **15.** Dave Jones has been informed and warned several times, yet about several « problems », thanks to

5    the complaints filed by Plaintiff, and too, by the civil complaint filed the 28th of october 2014 at

6    Santa Cruz Superior Court. But, being so informed, he did not act, he did not investigate, he did not

7    respect his duty, what he is paid for, and he did not show his good faith and honesty. Dave JONES is

8    fully responsible to have done absolutely nothing against this insurance company.

9    **16.** Indeed, his own and only behaviour was a dishonest answer about the lawsuit filed at Santa Cruz

10    Superior Court where he is defendant. Instead to repair what it could be considered as an error, and

11    so by starting at once an investigation, he, by his incompetent attorney, is trying to be away from the

12    lawsuit by a series of illegal demurrers based on lies, fake allegations.

13    **17.** Dave JONES, in no way, is answering about the quality of the behaviour of « INTERINSURANCE

14    EXCHANGE OF THE AUTOMOBILE CLUB » for which Plaintiff filed a complaint.

15    **18.** A honest man does not act as is.

16    **19.** And the criminal offenses committed by this insurance company are still existing, Plaintiff is still

17    suffering, and this insurance company is continuing to do fraudulent act. As nothing is free, Dave

18    JONES win something by refusing to do his duty. Corruption.

19    **20.** Otherwise, « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB » claimed to

20    Plaintiff, they have no contract with him. But this company treated Plaintiff as their client, with

21    contempt. It is true, there is no contract, but they acted as if there was one, by discussing directly

22    with him. And second, there is something more than a civil contract, there is an obligation by Law.

23    **21.** Otherwise, authorities like « CHP Aptos » and « Santa Cruz Sheriff's office » have interests to

24    protect Jack LADD because they work with him all year long, via his tow company.

25    **22.** The general collusion of around twenty persons acting illegally together as one against Plaintiff,

26    alone, victim of a car accident where he is 0% responsible, suffering yet pains and financial

27    damages, did increase his prior damages, but created new ones.

28    **23.** The last and new damages disturbed seriously his private and professional lifes since the beginning,

1    at the point that Plaintiff has had to stop to work on his several projects, and especially the one for

2    which he had created a company few months ago. He had to keep focus on his fight against a gang of

3    criminals, in order to save his interests, and to avoid that anyone else can suffer from the same dirty

4    behaviour, at least by the same persons. Otherwise, Plaintiff has had to stop two of his companies,

5    one in UK, and one in US.

6    **24.** The criminal acts committed deliberately by Jack LADD, Lyle WOLLERT, James PETTIT, Ryan

7    YORK, Phil WOWAK, CJ. LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON,

8    GAIL LOUIS, Chris BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG,

9    « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB », «AAA SOUTHERN

10    CALIFORNIA», Scott KWIERAN, James ROBBINS, Glenn RENWICK, Chuck JARRET,

11    « PROGRESSIVE WEST INSURANCE COMPANY », Nancy FLORES, Tom HAINES, Paul

12    VINCENT, together for a common goal, and each of one, for their own benefit and against Plaintiff,

13    are, in addition of the violation of several state and federal laws, a quadruple violation of Plaintiff's

14    Civil Rights under the aggravating factor that some represent authorities and some other represent a

15    company having administrative obligations ; first regarding his property rights ; second, regarding

16    his right to have access and to obtain justice by getting a fair trial with a real evidence, which is

17    otherwise his property ; third, regarding his right to obtain and to get payment for his damage; and

18    fourth, regarding the fact he was facing a deliberate obstruction of justice under the aggravating

19    circumstances of premeditate and organized one, committed by an organized group, for a hidden

20    specific criminal purpose.

21    <div align="center">**CLAIM 14**</div>

22    <div align="center">**COLLUSION FOR NEGATIVE HARASSMENT AND INTENTIONAL INFLICTIONS OF**</div>

23    <div align="center">**EMOTIONAL DISTRESS**</div>

24    <div align="center">**Violation of Civil Rights**</div>

25    36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

26    law; 42 U.S. Code § 1983 - Civil action for deprivation of rights; 42 U.S. Code § 1985 - Conspiracy to

27    interfere with civil rights.

28    18 U.S. Code § 1510 - Obstruction of criminal investigations; 42 U.S. Code § 1995 - Criminal contempt

1                        proceedings; penalties; trial by jury.

2  **1.** Regarding Defendants Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK,

3       CJ. LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris

4       BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Scott KWIERAN, James

5       ROBBINS, Glenn RENWICK, Chuck JARRET, Tom HAINES, Paul VINCENT, Dave JONES,

6       Edmund Gerald "Jerry" BROWN.

7  **2.** Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

8       present complaint.

9  **3.** A negative harassment, or harasment by negating, is a way to create an infliction of emotional

10      distress and pains by a systematic negative behaviour. There are two ways of negative harassment,

11      the systematic ignoring and the systematic denial. Negative harassment is created by the fact to deny

12      or the fact to ignore any request, any contact made by the other person. To compare both kind of

13      harassments, the negative is to give none answer instead to give a lot of answers for a normal one.

14      The goal is to inflict an emotional distress which has the same impact than a normal harassment but

15      aggravated by the worry of uncertaintity which causes more pains.

16  **4.** All defendants, each of one, and together, did commit both negative harassments ; they

17      systematically did deny the truth by lying, erasing evidence, distorting facts, and they systematically

18      did refuse to answer to embarassing remarks, arguments and questions raised by Plaintiff.

19  **5.** Plaintiff's emotional distress has been created and increased by negative harassments, by the

20      behaviour of all defendants using the same fake, unlawful ways, always and always. As for any

21      honest person, the fact to face an impossibility of means and ways to obtain justice is a moral pain.

22      And worse, when it comes from an unfair amd dishonest judicial system forbidding, blocking

23      Plaintiff to get the way and the means for a criminal investigation which can lead him to get justice,

24      by sanctions to criminals, and payments for his damages from all of them, from all the responsibles,

25      as a punishment according the enforcement of justice and the respect of Law.

26  **6.** Plaintiff suffered to have no means to prove he was right, he was a victim.

27  **7.** Plaintiff suffered more of moral pains by the fact that United States has laws, « Declaration of

28      Independance », « Bill of Rights » and « The Constitution » which are a guarantee about his Civil

1    Rights. In a dictatorship country or in a banana republic, Plaintiff as any honest man, would have

2    less suffered of the same situation because he would have known yet the problem before, and he

3    would have no hope, no uncertainty about the loss of his rights. But, Plaintiff chose to live in United

4    States for its noble origin spirit. Plaintiff is only guilty to have been naive when he faced

5    unconstitutional State of California rules and laws, believing that California was a state of United

6    States.

7  **8.**  Without any doubt, Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK, CJ.

8      LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris

9      BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Scott KWIERAN, James

10     ROBBINS, Glenn RENWICK, Chuck JARRET, Tom HAINES, Paul VINCENT, Dave JONES,

11     Edmund Gerald "Jerry" BROWN together for a common goal, and each of one, for their own benefit

12     and against Plaintiff, did commit deliberately a violation of federal laws and Plaintiff's Civil Rights,

13     causing damages to Plaintiff under the aggravating circumstances of premeditate and organized one,

14     for a hidden specific criminal purpose.

15                                  **CLAIM 15**

16                 **DISCRIMINATION REGARDING NATIONAL ORIGIN**

17                           **Violation of Civil Rights**

18   36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the

19   law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of

20              rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

21             42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

22  **1.**  Regarding Defendants Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK,

23      CJ. LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris

24      BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Scott KWIERAN, James

25      ROBBINS, Glenn RENWICK, Chuck JARRET, Tom HAINES, Paul VINCENT,  Dave JONES,

26      Edmund Gerald "Jerry" BROWN.

27  **2.**  Plaintiff re-alleges herein by this reference each and every allegation previously contained in the

28      present complaint.

3. National origin discrimination involves treating people unfavorably because they are from a particular country or part of the world, because of ethnicity or accent, or because they appear to be of a certain ethnic background (even if they are not).

4. It is unlawful to harass a person because of his or her national origin. Harassment can include, for example, offensive or derogatory remarks about a person's national origin, accent or ethnicity.

5. All those people committed together criminal acts for a common purpose, the alteration of the truth against Plaintiff's interest, in order to despoil him of his rights, and of his property, because Plaintiff is French, european, and because Plaintiff is not american.

6. Plaintiff filed yet a civil complaint at Superior Court of Santa Cruz against most of those defendants, about their first criminal offenses, and for only common answer, defendants did not answer about the criminal acts denounced by Plaintiff, but only dared to treat Plaintiff as a moron, saying in the affirmative that everything Plaintiff wrote was « *ambiguous* », « *incomprehensible* » and « *unintelligible* ». They declared this, through their attorneys, with no clue, no proof, no demonstration, no example.

7. Because it is false, because they deliberatley lied in an official declaration presented at a court, and it is yet a perjury, this behaviour is a violation of Civil Rights by a discrimination regarding national origin.

8. This discrimination was a unfair and illegal act in order to deprive Plaintiff of his Civil Rights, and especially the ones about equal rights, and to obtain payment for his damages.

9. Because they did use the same fake argument for a common purpose, it is a conspiracy to interfere with Civil Rights.

10. Plaintiff requested a proof reading of his complaints by persons having the ability to do it. They replied « *The message and ideas behind the written complaint, while not concise, tell a relatively clear story. Mr. Granier's grievances, and his claims regarding the history/timeline of those claims, are comprehensible and unambiguous. Writing style and grammar aside, the document is coherent and follows a path of logic* ».

11. We have to remember the fact that California was the last state in United States to end racist state laws...

12. Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK, CJ. LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Scott KWIERAN, James ROBBINS, Glenn RENWICK, Chuck JARRET, Tom HAINES, Paul VINCENT, Dave JONES, Edmund Gerald "Jerry" BROWN committed deliberately a violation of Plaintiff's Civil Rights concerning his national origin.

## CLAIM 16

### LACKS OF RESPECT OF ADMINISTRATIVE DUTIES REGARDING CIVIL RIGHTS, VIOLATION OF CIVIL RIGHTS, AND ACTS CONTRARY TO THE LAWS OF UNITED STATES

### Violation of Civil Rights

36 CFR 1275.44 - Rights and privileges; right to a fair trial; 42 U.S. Code § 1981 - Equal rights under the law; 42 U.S. Code § 1982 - Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of rights; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

18 U.S. Code § 201 - Bribery of public officials and witnesses; 42 U.S. Code § 1986 - Action for neglect to prevent; 42 U.S. Code § 1995 - Criminal contempt proceedings; penalties; trial by jury.

1. Regarding Defendants Dave JONES, « California Department of Insurance », Edmund Gerald "Jerry" BROWN, « State of California ».

2. Plaintiff re-alleges herein by this reference each and every allegation previously contained in the present complaint.

3. About the violation of Civil Rights by the existence of an unconstitutional state law concerning the obligation for victims to warn state agencies before to file a complaint against them.

CALIFORNIA GOVERNMENT CODE SECTION 945 : « *A public entity may sue and be sued.* ».

But, 945.4 : « *Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division.* ».

State laws of California oblige victims to inform and to warn State agencies in case of « problems »

1    before to file a complaint against them. Fail to this obligation forbids victims to sue State and/or

2    concerned agencies. Indeed, this unfair law is only for the exclusive benefit of the State and its

3    agencies, and never for the victims. It is only a way for agencies to evaluate the risk, their own

4    judicial risk, but in no way to give them the opportunity to do their duty. They are continuing to do

5    nothing against criminals since they are famous, powerful, so, useful for the State business. The

6    proof is given by the fact that Plaintiff was suing « State of California », « CDI » and Dave JONES

7    in another part of this case, by the complaint filed the 28th of october 2014 at Superior Court of Santa

8    Cruz, and despite the fact that Plaintiff warned « CDI » before, all of three, together as one, replied

9    by using this unfair law. And they dared to claim this by asking for a hearing before the jury trial,

10   under a demurrer based on lies and fake allegations. But, on the name of equity, for example by « 42

11   U.S. Code § 1981 - Equal rights under the law », common sense shows that it is up to the jury to

12   judge if the lack, the failure of this obligation is absolutely, or not, a factor to dismiss, or not, the

13   case, and even to determine if this law is appropriate or not, indeed if it is lawful, even

14   constitutional, or not. All of them did not want to be part of the trial despite the fact they could claim

15   this argument in front of a jury, and win, if it was true, if they were right, if it was fair. The fact to

16   claim this point as demurrer before the trial is a proof that they acted illegally, and they know that

17   this law is against common sense, is illegal, is unconstitutional. So, they are trying to avoid a trial by

18   using a process which is against Plaintiff's Civil Rights. The best proof about the unconstitutionality

19   and nonsense of this absurd law, comes from the complaint itself where they are defendants, because

20   at this time, they have the knowledge of the criminal acts they are supposed to control, investigate

21   and prosecute, and they do nothing. They have the full knowledge and the duty but they don't do

22   anything, proving the vain aspect and the useless for a victim to warn them. So, if Plaintiff had

23   warned them before, they did not act too, and the result was the same, that is proving their legitmate

24   presence as defendants in the complaint. Indeed this requested process is a waste of time for victims,

25   and a win of time for criminals ; a way causing more damages to victims, a way to give more help to

26   criminals. It is not fair at all, it is not justice, it is not common sense, it is not spirit of United States.

27   The only purpose of such a law could be useful only if authorities would have done something. They

28   did not. This is the proof that this law is made by the Sate for the State, and worse, under absurd

1    purposes because with their answer, they proved they were guilty. In addition, they avoid a jury trial

2    by using a process by demurrer, where only one judge will decide, creating so, a serious conflict of

3    interests, by the link of subordination and by the fact that judges are under the authority of the State,

4    and so, the Attorney General. By this way too, it is a violation of victims' civil rights.

5    4.  About the violation of Civil Rights by the existence of an unconstitutional state law concerning a

6        dishonest and unfair process to avoid a jury trial by just declaring in the affirmative with no clue, no

7        proof, no demonstration, no example, that everything is « *ambiguous* », « *incomprehensible* » and

8        « *unintelligible* », as they did it about one of Plaintiff's complaints.

9    Local CODE of CIVIL PROCEDURE SECTION 430.10 :

10   *« 430.10.   The party against whom a complaint or cross-complaint has been filed may object, by*

11   *demurrer or answer as provided in Section 430.30, to the pleading on any one or more of the*

12   *following grounds:*

13       *(e) The pleading does not state facts sufficient to constitute a cause of action.*

14       *(f) The pleading is uncertain. As used in this subdivision, "uncertain" includes ambiguous and*

15   *unintelligible. »*

16   In fact, it is a trickery, means of trickery using lies and perjuries, means given to criminals by State

17   of California through its unconstitutional laws. An answer about this point can only be given by a

18   jury itself, the entity, the persons who have the duty to judge the case, the entire case. And of course,

19   if the complaint is really unintelligible, no one jury will follow Plaintiff. So, a complaint declared by

20   a party as « *ambiguous* », « *incomprehensible* » and « *unintelligible* » can not file any demurrer

21   without doing a violation of Civil Rights, because it is up to a jury, in a case of a jury trial, during the

22   trial itself, to determine this fundamental point. This law is ridiculous because no one defendant has

23   to file a demurrer process before the trial, because he can not be afraid by a jury if the content of the

24   complaint is really « *ambiguous* », « *incomprehensible* » or « *unintelligible* ». Indeed, problems of

25   understanding come more from the intellectual abilities of the reader than texts themselves. With this

26   law, any defendant can claim this point since he has hired a moron as attorney. The hidden part of

27   this law, in fact, is about the goal of authorities to oblige people to take a lawyer, and so, to forbid

28   them the fundamental civil right to defend themselves. This way gives means to block people to pick

1  out some embarrassing points leading to awkward situations about some unfair laws, or on some

2  defendants...

3  **5.** About the violation of Civil Rights by the existence of an unconstitutional state law forbidding

4  victims the way to file directly to prosecutor their criminal complaints, and so, to obtain a criminal

5  investigation and a prosecution of the persons who victimized him. This impossibility for victims to

6  file a criminal complaint directly to the prosecutor, which is indeed an obligation to pass through a

7  local police or Sheriff department, is a violation of their Civil Rights since there is no way to bypass

8  corruption of authorities. Plaintiff suffered of several behaviours of corruption of local authorities

9  who blocked him the access to prosecutor, even against criminals having criminal records.

10 **6.** About the violation of Civil Rights committed by insurance companies regarding their liabilities and

11 their limit of payment about damages to victims. The existence of an illegal limited budget by claim.

12 The existence of a limited fixed amount to pay damages for any claim is only acceptable and lawful

13 for an insured regarding his own damages paid by his own insurance company, because he took a

14 contract according the value of his property, and according his will about his own risks on his

15 property. United States gives total freedom of the choice for anything, so, it is up to owners to take

16 responsibility for their own property, and so their possible loss. Common sense. But, when it comes

17 to a victim of a third party, the victim has not to be afflicted by the existence of a fixed allocated sum

18 claimed by the insurance company of the adverse party, with which he never signed any contract of

19 limit of liability. Because nobody chooses to become victim, because nobody chooses by whom he

20 will be victimized, and so the liability and terms of the responsible's policy insurance, a victim,

21 being not responsible and having done nothing wrong, has not to pay from his pocket for damages

22 caused by a third party. In any civilized country, meaning no banana republic, nor dictatorship, nor

23 anarchy, any insurance company has to pay with no limit, any damage caused by its client to another

24 person. Common sense. Only limits about damages of their own clients exist because of contracts,

25 personal choice about his coverage, according his budget, his property, his way of life to take risks.

26 Common sense. To understand better the problem with the unlawful practices of Californian

27 insurance companies, showing they are managed by crooks, thanks to a local legislation copied from

28 a banana republic, we have to understand what an insurance is, and why the legislation came to

1    oblige by Law, people to get one. This obligation came with the coming of automobiles. It was really

2    the first time that people had to face each others in large numbers, causing damages to properties of

3    high values, meaning values that most of them was not able to pay damages they could cause. So, the

4    obligation to get an insurance was only to protect victims of insureds, not insureds themselves,

5    because freedom in US let the right to anyone to take responsibility for the consequences on their

6    own property, their own loss. States, countries had to guarantee a protection to victim about their

7    damages caused by other people. With no insurance, someone being insolvent, or simply having not

8    enough financial means to repay the damages he caused, can ruin a person by destroying his

9    property, losing everything. Insurance companies have to protect anybody from a loss caused by

10   another person, because the responsible could not pay. The existence of a limit of payment for

11   damages caused to a third party is absurd because the victim did not choose to have an accident, as

12   he did not choose the person who will victimize him according his policy coverage. The lack of

13   equity reaches its height because if the victim had had the accident with someone else, who has

14   another coverage, or simply with the same person who would have taken another insurance

15   company, or another contract, the victim would have had more or less, just according the terms of

16   the insurance of a person with whom he had no deal. In fact, for a same accident, for same damages,

17   a victim can have different amount of payments only according the situation of the responsible, the

18   choice of the responsible for his insurance policy. Payment and amount for damages to victim can

19   not be under the decision of another one, and let alone by a decision taken prior the accident, which

20   will involve the future of a third party. In addition, if Plaintiff had had a cheaper car, he would not

21   have had all these problems. But he has the right to buy and own the property he wants, whatever its

22   value. Civil Rights and car legislation to oblige people to be insured, have to guarantee an equity and

23   a payment for damages without regarding the situation of the responsible. It is common sense.

24   7.  About the violation of Civil Rights committed by insurance companies regarding their liabilities and

25       their limit of payment about damages to their insured, being not responsible. The existence of an

26       illegal non coverage clause in case of insured third party. The absurd Californian insurance system is

27       put in the wrong with the example of Plaintiff's case. His car had a value of $40,000, the insurance

28       company of the adverse party want to give him only $25,000 because of their so-called limit, about

1    which it is not the business of Plaintiff. So, he loses $15,000, because above $25,000, the insurance

2    of the third party refused to cover Plaintiff's damages, according a contract between, not him but the

3    responsible and his insurance, thanks to the failure of the State Law in this field. Plaintiff never

4    chose to have an accident, he never chose to have an accident with a person having a limit for the

5    caused damages, as Perri Noelle MONTGOMERY has never chosen the person she victimized, and

6    so the car according her « allocated budget », as Plaintiff did not buy a car by considering its value

7    within the budget of an insurance company with which he has no contract. So, if Plaintiff had had a

8    cheaper car, he would not have had all these problems. Indeed, following the dishonest reasoning of

9    insurance companies, any people has to be psychic when he buys a car, according the budget of the

10    insurance company of the person who will victimize him in the future. According insurance

11    companies, every people has to drive an old, cheap car in order to avoid to be screwed by an

12    unknown insurance company in case of accident. No one has to pay more his own insurance to have

13    his policy covering a variable limit according each third party existing in the world. Hazards is about

14    to get an accident with a person, insured or uninsured, never with an uncertain limit according a third

15    party with which victim had no link, and has to deal with, with no choice. In case of policy coverage

16    about uninsured people causing accident, any insurance company has to pay its client the full loss.

17    But the absurd comes with a case like Plaintiff's one. As third party is insured, his own insurance

18    company closed his claim case at once considering to be out of this accident. And so, even if third

19    party's insurance is insufficient to pay in full damages. But, as it is a failure from third party towards

20    victim, the complement of payment for damages missing from the limit of the insurance of third

21    party has to be paid by victim's insurance, as when and if a third party is uninsured. Common sense.

22    Californian Insurance system comes more absurd, because if Perri Noelle MONTGOMERY was not

23    insured, Plaintiff's insurance would have paid him the total value of his car. The great absurdity of

24    the Californian legislation comes by the fact that, if the responsible had not respected the law by

25    being insured, he would have been considered as uninsured, and Plaintiff would not have lose

26    money. Indeed, his insurance company does not want to pay the complement to the total value,

27    nevertheless if Perri Noelle MONTGOMERY was not able to pay the complement, which is, without

28    any doubt, the same situation for Plaintiff than if third party was not insured.

8. About the violation of Civil Rights committed by insurance companies regarding the non payment at once of expenses paid, or under pending payment, by victims. Insurance companies as « AAA »'s insurance companies refuse to pay at once each invoice edited, paid by victims, claiming they have to wait the end of the victim's recovery. Why ? There is no reason, because they have to pay, period. So, why a victim who never asked to become a victim would have to pay for them, to serve as banker for them ? Why a victim would have to wait for his recovery to be repaid of something already due by the insurance company in any case ? There is no reason for company to ask to wait, but a tool to build a blackmail for companies to oblige people to declare their recovery as soon as possible, not because they recovered their health but because they need money. Those dishonest and unfair common practices are illegal because the validity of this payment, the debt, is not subject to any discussion, and has to be paid without any delay. Insurance companies acting as is are against the Law by the fact, first, they use blackmail, in addition on a weak person, but by the fact they commit a violation of Civil Rights about the payment for damages. In civilized country, insurances of adverse parties send at once to victim, without any process, a first check of an amount fixed by Law. But, here too with this case, Californian insurance system shows behaviours and pratices defying honesty, fairness, equity, common sense, seeming to have been copied from a banana republic, but in no way, from United States regarding its « Declaration of Independance », « Bill of Rights » and « Constitution ».

9. Common conclusion for this claim :

Plaintiff suffered of damages caused by those unconstitutional laws of « State of California », creating a deliberate violation of his Civil Rights to get a trial, to get justice, to get payment for damages, to get a fair trial, and in addition, a violation of his Civil Rights by a discrimination regarding his national origin.

Plaintiff can not recover his loss, he can not obtain payment for his damages for which he is not responsible, despite the fact that the responsible is identified and insured.

Plaintiff suffered of all those lacks of legislation about insurance companies which are, each of them, a violation of his civil rights regarding his property and the payment of his damages caused by a third party.

1      Plaintiff suffered of damages from the deliberate lack of duty of « State of California », « California

2      Department of Insurance », Dave JONES and Edmund Gerald "Jerry" BROWN, caused by those

3      unconstitutional state laws.

4      « State of California » fails to his constitutional duty by a lack of regulation on insurance companies

5      rules regarding the payment of damages caused on victims, and so by a lack of guarantee of their

6      Civil Rights about 42 U.S. Code § 1981 - Equal rights under the law; 42 U.S. Code § 1982 -

7      Property rights of citizens; 42 U.S. Code § 1983 - Civil action for deprivation of rights.

8      As « State of California » does nothing against those unlawful and unfair current practices, « State of

9      California » and any agency related to the regulation of such practices are fully responsible. Those

10      insurance companies, as any company under the regulation of the state, owing a debt to a victim, is

11      doing a violation of Civil Rights with the complicity of the state.

12      **PRAYER FOR RELIEF**

13   **1.** For an order declaring each offense committed by each Defendant ;

14   **2.** For an order declaring each offense committed by each Defendant against Plaintiff ;

15   **3.** For punitive damages in an amount of not less than $10,000 for each of Defendants' retaliatory acts;

16   **4.** For an order declaring that each Defendant convicted of criminal and/or federal offense must be

17      forbidden to practice, to be involved, to be hired, to work for any kind of same activity than the one

18      under which he committed the criminal and/or federal offense ;

19   **5.** For an order declaring that a criminal investigation and a prosecution have to be done by authorities

20      on the criminal activities of each Defendant ;

21   **6.** For an order declaring that each Defendant convicted of criminal and/or federal offense has to be

22      sued by authorities on the criminal legal ways ;

23   **7.** For an order declaring that « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »

24      has to be crossed off as insurance company ;

25   **8.** For an order declaring that « PROGRESSIVE WEST INSURANCE COMPANY » has to be crossed

26      off as insurance company ;

27   **9.** For an order declaring that «AAA SOUTHERN CALIFORNIA» has to be forbidden to get an

28      insurance company ;

1    **10.** For an order declaring that « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »

2        has to pay to Plaintiff the sum of $10,000.000 for pain and suffering about moral exhaustion,

3        nervous prostration and emotional distress ;

4    **11.** For an order declaring that «AAA SOUTHERN CALIFORNIA» has to pay to Plaintiff the sum of

5        $10,000.000 for pain and suffering about moral exhaustion, nervous prostration and emotional

6        distress ;

7    **12.** For an order declaring that « PROGRESSIVE WEST INSURANCE COMPANY » has to pay to

8        Plaintiff the sum of $10,000.000 for pain and suffering about moral exhaustion, nervous prostration

9        and emotional distress ;

10    **13.** For an order declaring that « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »

11        has to pay to Plaintiff the sum of $10,000.000 for retributory damages caused on his private life ;

12    **14.** For an order declaring that «AAA SOUTHERN CALIFORNIA» has to pay to Plaintiff the sum of

13        $10,000.000 for retributory damages caused on his private life ;

14    **15.** For an order declaring that « PROGRESSIVE WEST INSURANCE COMPANY » has to pay to

15        Plaintiff the sum of $10,000.000 for retributory damages caused on his private life ;

16    **16.** For an order declaring that « INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB »

17        has to pay to Plaintiff the sum of $10,000.000 for retributory damages caused on his professional

18        life;

19    **17.** For an order declaring that «AAA SOUTHERN CALIFORNIA» has to pay to Plaintiff the sum of

20        $10,000.000 for retributory damages caused on his professional life ;

21    **18.** For an order declaring that « PROGRESSIVE WEST INSURANCE COMPANY » has to pay to

22        Plaintiff the sum of $10,000.000 for retributory damages caused on his professional life ;

23    **19.** For an order that Jack LADD, Lyle WOLLERT, James PETTIT, Ryan YORK, Phil WOWAK, CJ.

24        LUCAS, Cynthia VELASCO, Cynthia DRAGER, Bob JORGENSON, GAIL LOUIS, Chris

25        BAGGALEY, Robert T. BOUTTIER, John F. BOYLE, David LANG, Scott KWIERAN, James

26        ROBBINS, Glenn RENWICK, Chuck JARRET, Tom HAINES, Paul VINCENT, have to pay jointly

27        and severally, to Plaintiff a principal sum of $10.000.000 ;

28    **20.** For an order declaring unconstitutional the article of law « 945.4 » of the CALIFORNIA

1    GOVERNMENT CODE SECTION.

2    **21.** For an order declaring unconstitutional the article of law « 430.10 », paragraphs (e) and (f) of the

3    CALIFORNIA CODE of CIVIL PROCEDURE.

4    **22.** For an order declaring unconstitutional the impossibility for any victim to file a criminal complaint

5    in California, directly to a prosecutor and the obligation to file to an authority as law enforcements.

6    **23.** For an order declaring unconstitutional the obligation for any victim to file a criminal complaint in

7    California, throught an authority as law enforcements.

8    **24.** For an order declaring unconstitutional the behaviours of Dave JONES and Edmund Gerald "Jerry"

9    BROWN against Plaintiff.

10   **25.** For an order declaring unconstitutional the registration of lien, even a pending one, on properties,

11   based only on declarations made by the requester, without a judgement.

12   **26.** For an order declaring unconstitutional the possibility for « DMV » to register a lien, even a pending

13   one, on a car title based only on declarations made by the requester, without a judgement and proofs.

14   **27.** For an order declaring unconstitutional the existence of limits of payment for insurance companies to

15   victims of their insureds.

16   **28.** For an order declaring unconstitutional the non obligation and/or the refusal from insurance

17   companies to pay their own insured, their own client, the complement concerning the missing of

18   payment caused by the failure and/or the limit of coverage of the adverse party, when their insured

19   has a policy coverage concerning uninsured third party.

20   **29.** For an order declaring unconstitutional the fact that the responsible of a damage has not to pay at

21   once his victim.

22   **30.** For an order declaring unconstitutional the fact that insurance companies have not to pay at once the

23   victims of their insured clients.

24   **31.** For an order declaring the fact that insurance companies have to pay at once the victims of their

25   insured clients.

26   **32.** For an order declaring that « State of California » under the main responsibility of Edmund Gerald

27   "Jerry" BROWN, and « California Department of Insurance » under the responsibility of Dave

28   JONES, have to pay jointly and severally, to Plaintiff a principal sum of $10.000.000 for pain and

1    suffering about moral exhaustion, nervous prostration and emotional distress ;

2    **33.** For an order declaring that « California Highway Patrol » under the responsibility of Joseph A.

3    FARROW about the offenses committed by their officer Paul VINCENT against Plaintiff, have to

4    pay jointly and severally, to Plaintiff a principal sum of $10.000.000 for pain and suffering about

5    moral exhaustion, nervous prostration and emotional distress.

6    **34.** For an order declaring that « Department of Motor Vehicles of California" under the responsibility of

7    Jean M. SHIOMOTO, has to pay to Plaintiff a principal sum of $10.000.000 for pain and suffering

8    about moral exhaustion, nervous prostration and emotional distress ;

9    **35.** For an order declaring that Ryan YORK, as Deputy of Sheriff Phil WOWAK, and Phil WOWAK, as

10   Sheriff of Santa Cruz County, have to pay jointly and severally, to Plaintiff a principal sum of

11   $10.000.000 for pain and suffering about moral exhaustion, nervous prostration and emotional

12   distress.

13   **36.** For actual property damages to Plaintiff in an amount according to proof at trial;

14   **37.** For actual body injury damages to Plaintiff in an amount according to proof at trial;

15   **38.** For interest thereon at the maximum legally permissible rate;

16   **39.** For all costs of suit incurred herein; and

17   **40.** For such other and further relief as deemed just and proper.

18   **41.** For attorney's fees according to proof ;

19   **42.** For spent personal time and expenses according the status of representing self ;

20   **43.** For costs of suit incurred herein ; and

21   **44.** For such other and further relief as the Court may deem just and proper.

22                          **DEMAND FOR JURY TRIAL**

23                  Plaintiff, Laurent GRANIER, hereby demands a trial by jury.

24   The 08th of decenber 2014.

25   Laurent GRANIER, Pro se Plaintiff.