United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LAURENT GRANIER,

Plaintiff,

v.

JACK LADD, et al.,

Defendants.

Case No. 5:14-cv-05372-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 37, 42, 45, 46, 47, 48, 52, 85

*Pro se* Plaintiff Laurent Granier ("Plaintiff") initiated the present action asserting criminal and civil rights violations against a varied group of 34 defendants, including the State of California, California Highway Patrol ("CHP"), California Department of Insurance ("CDI"), California Department of Motor Vehicles ("DMV"), Governor Edmund G. Brown, CHP Commissioner Joseph Farrow ("Commissioner Farrow"), California Insurance Commissioner Dave Jones ("Commissioner Jones"), Interinsurance Exchange of the Automobile Club ("Interinsurance Exchange"), AAA Southern California, Progressive West Insurance Company ("Progressive West"), and various individuals (collectively, "Defendants"). In short, Plaintiff alleges Defendants colluded in the theft of his car and interfered in his attempt to recover the car, thereby violating federal criminal law and his civil rights.

Federal jurisdiction arises under 28 U.S.C. § 1331. Presently before the court are Defendants' several motions to dismiss the complaint. See Dkt. Nos. 37, 42, 45, 46, 47, 48, 52, 85. The court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7–1(b) and previously vacated the hearing. Having carefully reviewed the parties'

briefing, Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The allegations in Plaintiff's 66-page complaint arise from his involvement in an automobile accident. The following is a summary of the salient portions:

On October 9, 2014, in the County of Santa Cruz, Plaintiff was involved in an automobile accident when Defendant Perri Noelle Montgomery ("Montgomery") hit Plaintiff's car in the rear. Compl., Dkt. No. 1 at ¶ 1. An ambulance and the police arrived to the scene, and Plaintiff was taken to the hospital because he had pain in his back, left shoulder, neck, and left bottom. Id. at ¶ 2. Before leaving for the hospital, Plaintiff gave the police officer a copy of his AAA automobile club membership, and the police officer called Ladd's Auto Body & Towing ("Ladd's") to tow both cars. Id. at ¶¶ 2-3.

### A. Automobile Insurance Dispute

Plaintiff's automobile insurer was Progressive West. Id. at ¶ 6. He alleges that Progressive West failed to assist Plaintiff in the handling of his claim and settling his losses, and Progressive West ultimately closed Plaintiff's claim regarding the automobile accident. Id. at ¶¶ 6-7. Plaintiff alleges he was left on his own to contact Montgomery and her automobile insurance company. Id. at ¶¶ 8-9.

Plaintiff alleges that during his investigation, he learned that Montgomery's insurance company was listed as "CAA," but was not registered with the CDI. Id. at ¶ 10. After obtaining assistance from his automobile club, Plaintiff discovered that "CAA" was in actuality AAA Southern California. Id. at ¶¶ 12, 14. He was then able to communicate with AAA Southern California's claims manager, Defendant C.J. Lucas ("Lucas"). Id. at ¶ 14. Plaintiff alleges that "CAA" and AAA Southern California are "fake names" for Defendant Interinsurance Exchange. Id. at p.4.

Plaintiff reported at least two damages to Lucas: payment for the repair of his laptop, which broke during the automobile accident; and payment for the damages of his car. Lucas did

United States District Court
Northern District of California

not issue a payment for the repair of the laptop. Id. at ¶¶ 16-17. As to the car, Lucas wanted proof of its replacement value, thus he sent an expert to Ladd's to evaluate the damages and value of the car. Id. at ¶¶ 17-20. After a couple of days, Lucas told Plaintiff that the estimated value of the car was $17,086.20, even though Plaintiff had earlier sent Lucas an advertisement showing the value of a nearly identical car to be at $39,9990. Id. at ¶ 21.

Plaintiff challenged the estimate, and sent emails and "formal notices" to Lucas and Lucas's manager, Defendant Cynthia Velasco ("Velasco"). Id. at ¶ 23. Plaintiff asked for proof of the value estimate and asked for information concerning Interinsurance Exchange. Id. at ¶ 23. In each of these formal notices, Plaintiff claimed a total of $72,050 in property damages and expenses, and claimed damages for the "hassle" he endured that disturbed his mind, and private and professional lives. Id. at ¶¶ 25-26. In sum, Plaintiff asked for at least $500,000. Id. at ¶ 26.

Plaintiff alleges he filed a complaint with the CDI alleging misconduct on the part of Interinsurance Exchange, which conducted business as "CAA" and AAA Southern California. Id. at ¶ 27. The CDI, however, did not conduct any investigation. Id. Plaintiff thereafter filed a civil complaint in Santa Cruz County Superior Court against Lucas, Velasco, and individuals from AAA Southern California and the CDI. Id. at ¶ 28. The causes of action are unknown.

**B. Automobile Theft**

On October 29, 2014, Plaintiff alleges he went to Ladd's to see his car and discovered it was missing. Id. at ¶ 29. Ladd's manager, Defendant Lyle Wollert ("Wollert"), told Plaintiff that, the day before, someone from the insurance company went to Ladd's to pick up the car. Id. Since Wollert was unable to provide the name of the person who picked up the car, he referred Plaintiff to Ladd's owner, Defendant Jack Ladd ("Ladd"). Id. at ¶ 30. Ladd provided Plaintiff with a document brought by the person who picked up the car, and Ladd showed Plaintiff that the invoice for the towing and storage of the car was paid by the person who took the car. Id.

Plaintiff subsequently went to the Santa Cruz County Sherriff's Office to report the theft of his car, and met with a deputy sheriff, Defendant Ryan York ("Deputy York"). Id. at ¶ 31.

3

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

Plaintiff alleges Deputy York called Ladd and was told that the car was picked up by the insurance company "CAA." Id. Deputy York declared this matter to be a civil matter because there was no theft, and refused to file Plaintiff's criminal report for theft. Id. at ¶ 32. Plaintiff then filed a civil complaint in Santa Cruz County Superior Court against Ladd, Wollert, and the Sheriff-Coroner for Santa Cruz County, Defendant Phil Wowak ("Sheriff Wowak"). Id. at ¶ 38. The causes of action are unknown. Plaintiff also filed a claim with his automobile insurance company, Progressive West, reporting the theft of his car. Id. at ¶ 40.

On November 3, 2014, Plaintiff alleges he went to the CHP office in Santa Cruz County to report the theft of his car, and was able to file a report. Id. at ¶ 42. After filing the CHP report, Plaintiff spoke to the claims investigator for Progressive West, Defendant Scott Kwieran ("Kwieran"). Id. at ¶ 43. Kwieran told Plaintiff that his car was not stolen, but it was moved by "AAA." Id. When Plaintiff asked for written proof of the removal or the recovery of the car by Progressive West, Kwieran refused to provide any such proof. Id.

Later, Plaintiff alleges he went to his home and picked up his mail. Id. at ¶ 48. In the mail, he discovered a letter Ladd sent him that included a "fake invoice" for tow and storage of his car, and stated that a lien was placed on the car. Id. The letter included a document of the pending lien at the DMV registered by Defendant James Pettit ("Pettit") for a vehicle valued at $4,000. Id. Plaintiff alleges that this letter proves Ladd stole his car. Id. at ¶¶ 51-52.

The following week, while Plaintiff was in Los Angeles, he alleges that he went to the CHP office and learned that the CHP report he previously filed in Santa Cruz County had been deleted from CHP records. Id. at ¶¶ 52-53. The CHP officer in Los Angeles did not file a new report, but told Plaintiff to file the report in the CHP office in Santa Cruz County. Id. at ¶ 53. Plaintiff called the CHP office in Santa Cruz County and was told that a claim representative for Plaintiff's insurance company called CHP and asked to delete the file about the theft because no theft had occurred. Id. at ¶ 54. The CHP office then advised Plaintiff to call his insurance company. Id.

4

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

**C. Procedural History**

Plaintiff commenced the instant action on December 8, 2014, asserting the following sixteen claims against all 34 Defendants:

| | *Claim* | *Allegations* |
|---|---|---|
| 1 | Violation of Civil Rights: Organized Gang Theft | Briefly, Plaintiff alleges that under Lucas's order, Ladd and Wollert stole Plaintiff's car. |
| 2 | Violation of Civil Rights: Receiving Stolen Goods | Briefly, Plaintiff alleges that under Lucas's order, Ladd and Wollert delivered Plaintiff's car to a person sent by Lucas. The unknown person then took possession of the car. |
| 3 | Violation of Civil Rights: Identity Theft and Impersonation | Briefly, Plaintiff alleges that under Lucas's order, Ladd and Wollert delivered Plaintiff's car to an unknown person. The unknown person took possession of the car and paid Ladd's invoice on Plaintiff's behalf, thus using Plaintiff's identity without his knowledge. |
| 4 | Violation of Civil Rights: Laundering Money | Briefly, Plaintiff alleges that under Lucas's order, Ladd and Wollert edited an invoice addressed to Plaintiff that was paid by an unknown person on Plaintiff's behalf. |
| 5 | Violation of Civil Rights: Theft of Evidence | Briefly, Plaintiff alleges that under Lucas's order, Ladd and Wollert stole and delivered Plaintiff's car, which was the only evidence supporting Plaintiff's damages arising out of the automobile accident. He alleges that the car was the basis for damages owed by Interinsurance Exchange to Plaintiff. |
| 6 | Violation of Civil Rights: Fake Declarations, Lies and Perjury to an Official Agency | Briefly, Plaintiff alleges that Ladd edited a fake invoice addressed to Plaintiff and used Pettit to register at the DMV a lien on the title of the car. He alleges that the declaration supporting the lien was made under perjury because the car was no longer in Ladd's custody and the value of the car is not $4,000. He further alleges that the DMV's improper process on lien of title allowed this misconduct to occur. |

5

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

| | | |
|---|---|---|
| 7 | Violation of Civil Rights: Corruption and Obstruction of Justice by Officer Having Authority | Briefly, Plaintiff alleges that Deputy York's refusal to file a report protected Ladd and Wollert from prosecution, and forbade Plaintiff the means to recover his car. He further alleges that the filing of a report would have provided the basis for Progressive West declaring the car as stolen. |
| 8 | Violation of Civil Rights: Fake Declaration, Dissimulation, Lies, Perjury and Alteration of the Truth in Order to Delete and Erase Evidences of Criminal and Federal Offenses | Briefly, Plaintiff alleges that Kwieran and other individuals from Progressive West made false declarations using lies and perjury in order to hide the offenses committed by Ladd, Wollert, and Lucas. |
| 9 | Violation of Civil Rights: Fake Declaration, Dissimulation, Lies, Perjury and Alteration of the Truth to Authorities in Order to Delete and Erase an Official Report | Briefly, Plaintiff alleges that Kwieran and other individuals from Progressive West "betrayed Plaintiff" and corrupted the CHP officer into deleting the CHP report previously filed by Plaintiff. |
| 10 | Violation of Civil Rights: Deletion and Erasure of Official Report by Person Having Authority | Briefly, Plaintiff alleges that under Kwieran's order, the CHP officers erased the CHP report previously filed by Plaintiff and called DMV to erase the report of car theft. He alleges that absent this misconduct, Plaintiff's car would have been recovered. He further alleges that a criminal investigation by the CHP would have led to the discovery of the unknown person who stole the car. |
| 11 | Violation of Civil Rights: Receiving of Stolen Goods and Participation in destruction of Evidence | Briefly, Plaintiff alleges that the car was dropped off at a company called Copart, which is an auction company that sells cars. He alleges that, under Lucas's order, Defendant Salvador Ortiz ("Ortiz") accepted the stolen car. |
| 12 | Violation of Civil Rights: Extortion Attempt and Blackmails | Briefly, Plaintiff alleges that representatives of Interinsurance Exchange used blackmail to pay Plaintiff's medical expenses and property damages in exchange for Plaintiff's declaration that he no longer has remaining injuries. |

| | | |
|---|---|---|
| 13 | Violation of Civil Rights: Collusion of Organized Group for Obstruction of Justice and Alteration of the Truth in Order to Delete and Erase Evidence of Criminal Offenses | Briefly, Plaintiff alleges that Kwieran refused to consider the car as stolen, and distorted the truth by lying, withholding information, and deleting evidence. He further alleges that the CDI should have investigated the misconduct committed by the insurance companies. |
| 14 | Violation of Civil Rights: Collusion for Negative Harassment and Intentional Inflictions of Emotional Distress | Briefly, Plaintiff alleges that Defendants denied the truth by lying, erasing evidence, and refusing to answer Plaintiff's complaints. He alleges that his suffered emotional distress. |
| 15 | Violation of Civil Rights: Discrimination Regarding National Origin | Briefly, Plaintiff alleges that he was discriminated against because he is French, European, and not American. He alleges that Defendants falsely "treated Plaintiff as a moron" in the state civil proceedings. |
| 16 | Violation of Civil Rights: Lacks of Respect of Administrative Duties Regarding Civil Rights, Violation of Civil Rights, and Acts Contrary to the Laws of United States | Briefly, Plaintiff alleges that in the state civil proceedings, certain Defendants obtained a demurrer based on lies and are avoiding trial in violation of Plaintiff's civil rights. He alleges that state law provides for an unfair process that avoids a jury trial by dismissing the case through a demurrer. |

As prayer for relief, Plaintiff seeks damages and declaratory relief, including: (1) an order declaring that each Defendant has committed the offenses alleged; (2) an order declaring that a criminal investigation and prosecution must be conducted by the authorities; (3) an order declaring that the insurance companies must be "crossed off" as an insurance company; (4) an order declaring that each of the insurance companies must pay Plaintiff $10 million for pain and suffering, and emotional distress; an additional $10 million for "retributory damages caused on his private life;" and an additional $10 million for "retributory damages caused on his professional life;" (5) an order that Ladd, Wollert, Pettit, Deputy York, Sheriff Wowak, Lucas, and others have to pay Plaintiff a sum of $10 million; (6) an order declaring certain California statutes as unconstitutional; (7) an order declaring as unconstitutional the DMV's practice to register a lien on a car title relying solely on the declaration by the person making the request; (8) an order declaring

United States District Court
Northern District of California

that insurance companies must immediately pay the victims of accidents; (9) an order declaring that the State of California, the CHP, and the DMV must each pay Plaintiff $10 million for pain and suffering, and emotional distress; (10) an order declaring that the Santa Cruz County Sheriff's Office must pay Plaintiff $10 million for pain and suffering, and emotional distress; and (11) punitive damages of at least $10,000 for each of Defendants' retaliatory acts.

Defendants have filed eight motions to dismiss based on lack of subject matter jurisdiction, lack of personal jurisdiction, Eleventh Amendment immunity, and failure to state a claim. See Dkt. Nos. 37, 42, 45, 46, 47, 48, 52, 85. Opposition and reply briefs have been filed on certain motions. See Dkt. Nos. 60, 64, 67, 70, 74, 77, 80, 82, 83, 84.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When, as here, a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

### B. Federal Rule of Civil Procedure 12(b)(2)

Under Rule 12(b)(2), a defendant may move for dismissal based on lack of personal jurisdiction. Two independent limitations may restrict a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990). California's statutory limitation is co-extensive with the outer limits of due process. See id. at

8

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1361; Cal. Civ. Proc. Code § 410.10. Accordingly, the federal and state jurisdictional inquiries merge into a single analysis. See Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

Due process permits the exercise of jurisdiction if a court has either general or specific jurisdiction over a nonresident defendant. See Sher, 911 F.2d at 1361. "General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic.' Even if the cause of action is unrelated to those activities." Id. "Where general jurisdiction is appropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action." Id. (internal citations omitted).

**C. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

United States District Court
Northern District of California

## III. DISCUSSION

### A. Subject Matter Jurisdiction

As a threshold matter, certain Defendants contend this court lacks subject matter jurisdiction because the muddled nature of Plaintiff's complaint makes it difficult to determine whether subject matter jurisdiction exists. See Dkt. No. 42 at 9; Dkt. No. 47 at 6-7; Dkt. No. 48-1 at 4; Dkt. No. 85 at 8. "Federal district courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d 1024, 1027 (9th Cir. 2011) (internal quotations omitted). Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." In order to have federal question jurisdiction, "a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." Id. at 1029. The burden of establishing jurisdiction rests on the party asserting jurisdiction. Id. at 1027.

Here, Plaintiff asserts federal question jurisdiction and alleges the violation of a series of federal statutes, including the violation of civil rights. See Compl. at 2. Whether Plaintiff's claims are sufficiently pled and whether such claims are viable are more appropriately analyzed under a Rule 12(b)(6) standard, as discussed below. To the extent Plaintiff has asserted claims arising under federal law, however, his allegations are sufficient to establish federal question jurisdiction. Accordingly, Defendants' motions pursuant to Rule 12(b)(1) are DENIED.

### B. Personal Jurisdiction

Defendants Glenn Renwick ("Renwick"), President and CEO of The Progressive Corporation, and Charles Jarrett ("Jarrett"), Chief Legal Officer of The Progressive Corporation, move to dismiss the claims asserted against them on the basis that this court lacks personal jurisdiction over them. Dkt. No. 85 at 2. Renwick and Jarrett argue that Plaintiff does not adequately plead their presence in California, their consent to jurisdiction, or their minimum

10

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

contacts with California. Id. at 5-6. Plaintiff did not respond to this argument.

To the extent Plaintiff may assert specific jurisdiction over Renwick and Jarrett, the Ninth Circuit applies a three-prong test to determine whether a defendant has sufficient contacts to be susceptible to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). The plaintiff bears the burden of satisfying the first two prongs. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff succeeds, then the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. Id.

To the extent Plaintiff may assert general jurisdiction, "the plaintiff must demonstrate that the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013).

Here, Plaintiff alleges that both Renwick and Jarrett reside in Mayfield Village, Ohio. Compl. at 5. Plaintiff has provided no arguments as to whether he is asserting personal or general jurisdiction. In any event, there are no allegations indicating that Renwick or Jarrett have purposefully directed their activities towards California, or have purposefully availed themselves to the privilege of conducting activities in California; that the civil rights violation claims arise out of or are related to Renwick and Jarrett's activities in California; or that Renwick or Jarrett have had sufficient contacts with California to be continuous or systematic. Since Plaintiff has not met

11

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

his burden of establishing personal jurisdiction over Renwick and Jarrett, the motion to dismiss as to this issue is GRANTED. Therefore, all claims asserted against Renwick and Jarrett are dismissed without prejudice.

**C. Eleventh Amendment Immunity**

The State of California, on behalf of the CHP, CDI, DMV, Commissioner Farrow, and Commissioner Jones,[1] move to dismiss the claims asserted against them on the grounds of Eleventh Amendment immunity. Dkt. No. 38 at 2. In response, Plaintiff argues that this motion is unclear, he challenges the Deputy Attorney General's ability to represent the State of California, and he contends that the motion is an abuse of process and obstruction of justice. Dkt. No. 60 at 3-4.

It is well established that under the Eleventh Amendment, there is no federal jurisdiction over lawsuits asserted against a state, unless the state consents to the suit or Congress has abrogated the state's immunity. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73-74 (2000). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995). State agencies and agents are also immune under the Eleventh Amendment because "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials or state entities are nominal defendants." Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991).

Here, Plaintiff asserts claims against the CHP, CDI, DMV, and Commissioners Farrow and Jones—all of whom are state agencies and state agents. See Compl. at 40-44 (claims 9, 10), 48-52 (claim 13). Since there are no allegations that these state actors have consented to suit or Congress has abrogated their immunity, the Eleventh Amendment prohibits Plaintiff's claims against them.

[1] Defendants CHP Captain Paul Vincent and the DMV filed a joinder to the State of California's motion to dismiss. See Dkt. No. 56. Defendants' joinder is GRANTED.

United States District Court
Northern District of California

United States District Court
Northern District of California

To the extent Plaintiff intended to invoke a claim pursuant to 42 U.S.C. § 1983, that claim is also prohibited under the Eleventh Amendment. It is established that a state does not waive its Eleventh Amendment immunity with respect to a Section 1983 claim, nor did Congress intend to abrogate the state's immunity under Section 1983. Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Moreover, as to Commissioners Farrow and Jones, Plaintiff does not make specific allegations as to how they, in their individual capacities, violated Plaintiff's civil rights. Instead, Plaintiff's allegations focus on their official capacities as heads of their respective state agencies. See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) (noting that state officials sued in their official capacities are generally entitled to Eleventh amendment immunity). As such, they are immune from this lawsuit.

Since the Eleventh Amendment provides immunity to the State of California, state agencies and state agents, the motion to dismiss as to this issue is GRANTED. All claims asserted against the state and state-related defendants are dismissed with prejudice.

**D. Civil Liability Under Federal Criminal Statutes**

Sheriff Wowak and Deputy York move to dismiss Plaintiff's claims under Title 18 of the U.S. Code and 42 U.S.C. § 1995 because they are based on federal criminal statutes that do not provide a private right of action. Dkt. No. 52 at 8. In response, Plaintiff challenges Assistant County Counsel's ability to represent these defendants, and contends that the motion is an abuse of process and an obstruction of justice. Dkt. No. 77 at 3-4.

Federal criminal statutes do not provide a basis for civil liability. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that claims asserted under 18 U.S.C. §§ 241 and 242 are criminal provisions that provide no basis for civil liability); Elliot v. S.F. Dep't of Pub. Health, No. 15-cv-03127-MEJ, 2015 WL 4196544, at *2 (N.D. Cal. July 10, 2015) (dismissing plaintiff's claim for perjury); Sepehry-Fard v. Bank of New York Mellon, N.A., No. 12-cv-1260-LHK, 2012 WL 4717870, at *4 (N.D. Cal. Oct. 2, 2012) (dismissing claims under Title 18 of the U.S. Code).

Here, all of Plaintiff's claims assert the violation of several criminal statutes under Title 18 of the U.S. Code and 42 U.S.C. § 1995, none of which provide for a private right of action. Plaintiff has provided no basis to support civil liability under these criminal statutes. Therefore, the motion as to this issue is GRANTED.

Plaintiff's claims alleging the violation of the following criminal statutes are dismissed with prejudice: (1) 18 U.S.C. § 201 (bribery of public officials and witnesses); (2) 18 U.S.C. § 241 (conspiracy against rights); (3) 18 U.S.C. § 242 (deprivation of rights under color of law); (4) 18 U.S.C. § 873 (blackmail); (5) 18 U.S.C. § 1506 (theft or alteration of record or process; false bail); (6) 18 U.S.C. § 1510 (obstruction of criminal investigations); (7) 18 U.S.C. § 1621 (perjury); (8) 18 U.S.C. § 1623 (false declarations before grand jury or court); (9) 18 U.S.C. § 2312 (transportation of stolen vehicles); (10) 18 U.S.C. § 2313 (sale or receipt of stolen vehicles); (11) 18 U.S.C. § 2315 (sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps); (12) 18 U.S.C. § 2321 (trafficking in certain motor vehicles or motor vehicle parts); and (13) 42 U.S.C. § 1995 (criminal contempt proceedings; penalties; trial by jury).

**E. Failure to State a Claim Under the Code of Federal Regulations**

**i. <u>36 C.F.R. § 1275.44</u>**

Sheriff Wowak and Deputy York move to dismiss Plaintiff's claim under 36 C.F.R. § 1275.44 because the regulation is not actionable and Plaintiff has failed to state a claim. Dkt. No. 52 at 3. In response, Plaintiff challenges Assistant County Counsel's ability to represent these defendants, and contends that the motion is an abuse of process and an obstruction of justice. Dkt. No. 77 at 3-4.

Section 1275.44 pertains to the preservation and access to the presidential historical materials of the Nixon Administration. The regulation provides:

> (a) Within 30 days following publication of the notice . . ., any person claiming a legal or constitutional right or privilege which would prevent or limit public access to any of the materials shall notify the Archivist in writing of the claimed right or privilege and the specific materials to which it relates[.]

United States District Court
Northern District of California

United States District Court
Northern District of California

> (b) Within 30 days following publication of the notice . . ., officers of any Federal, State, or local court and other persons who believe that public access to any of the materials may jeopardize an individual's right to a fair and impartial trial should petition the Archivist setting forth the relevant circumstances that warrant withholding specified materials[.]

36 C.F.R. § 1275.44. This regulation is part of the Presidential Recordings and Materials Preservation Act, which "prescribes policies and procedures by which the National Archives and Records Administration will preserve, protect, and provide access to the Presidential historic materials of the Nixon Administration." 36 C.F.R. § 1275.10.

Given the allegations in Plaintiff's complaint, it appears that Plaintiff cited to Section 1275.44 because the regulation is entitled "[r]ights and privileges; right to a fair trial." To the extent Plaintiff intends to continue to rely on this statute as a basis for his claims, the regulation is inapposite to the matter at hand. Therefore, the motion as to this issue is GRANTED. Plaintiff's claims based on the alleged violation of 36 C.F.R. § 1275.44 is dismissed with prejudice.

**ii. <u>31 C.F.R. § 561.310</u>**

While Defendants do not specifically address the alleged violation of this regulation, Defendants generally move to dismiss because Plaintiff's claims are not cognizable and Plaintiff does not allege sufficient facts to state a plausible claim for relief. <u>See</u> Dkt. Nos. 42 at 5-9, 45-1 at 4-5, 46-1 at 4-5, 48-1 at 3-4.

Section 561.310 provides the definition for "money laundering:"

> The term money laundering means engaging in deceptive practices to obscure the nature of transactions involving the movement of illicit cash or illicit cash equivalent proceeds into, out of, or through a country, or into, out of, or through a financial institution, such that the transactions are made to appear legitimate.

31 C.F.R. § 561.310. This regulation is part of the U.S. Department of the Treasury, Office of Foreign Assets' Iranian Financial Sanctions Regulations. 31 C.F.R. Subt. B, Ch. V, Pt. 561.

Here, Plaintiff's claim for "laundering money" is that under Lucas's order, Ladd and Wollert edited an invoice that was paid on Plaintiff's behalf by an unknown person, and they

United States District Court
Northern District of California

delivered Plaintiff's car to that unknown person in exchange for the payment. Compl. at 32 (claim 4). There is no indication that Section 561.310 provides for a private right of action, nor are Plaintiff's allegations sufficient to establish that there was movement of illicit cash in or out of the United States or through a financial institution. Plaintiff's allegations cannot support a claim under this regulation. Therefore, the motion as to this issue is GRANTED. Plaintiff's claims based on the alleged violation of 31 C.F.R. § 561.310 is dismissed with prejudice.

**F. Failure to State a Claim Under 42 U.S.C. § 1981**

Defendants move to dismiss Plaintiff's claims alleging the violation of 42 U.S.C. § 1981 because Plaintiff's claim is not cognizable and does not allege sufficient facts to state a plausible claim for relief. See Dkt. Nos. 42 at 5-9, 45-1 at 4-5, 46-1 at 4-5, 48-1 at 3-4, 52 at 3-4. As above, Plaintiff's arguments in his opposition brief are unresponsive. See Dkt. Nos. 64, 67, 70, 74, 77.

Under Section 1981, "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" To establish a claim under Section 1981, the "cause of action need only allege that plaintiff suffered discrimination on the basis of race." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995) (internal quotations omitted). However, the allegations cannot be conclusory. "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (internal quotations omitted).

Here, Plaintiff asserts a claim entitled "discrimination regarding national origin," and alleges that Defendants committed criminal acts against Plaintiff's interest "because Plaintiff is French, European, and because Plaintiff is not american." Compl. at 55 (claim 15). Given Plaintiff's allegations, it appears his Section 1981 claim is based on his national origin. If so, such claim is inadequate.

United States District Court
Northern District of California

To the extent Plaintiff's claim is based on his race as "white," Plaintiff fails to allege how he was subjected to intentional discrimination based on his "white" race. See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate, 470 F.3d 827, 837 (9th Cir. 2006) (noting that notwithstanding the statutory text of Section 1981, the statute "prohibits discrimination against white people, as well as against non-whites"). As it is currently pled, Plaintiff fails to provide non-conclusory factual allegations that provide a reasonable inference of discrimination based on his race. Therefore, Defendants' motions as to this claim are GRANTED. Plaintiff's Section 1981 claim is dismissed without prejudice.

**G. Failure to State a Claim Under 42 U.S.C. § 1982**

Defendants move to dismiss Plaintiff's claims alleging the violation of 42 U.S.C. § 1982 because Plaintiff's claim is not cognizable and does not allege sufficient facts to state a plausible claim for relief. See Dkt. Nos. 42 at 5-9, 45-1 at 4-5, 46-1 at 4-5, 48-1 at 3-4, 52 at 3-4. As above, Plaintiff's arguments in his opposition brief are unresponsive. See Dkt. Nos. 64, 67, 70, 74, 77.

Under Section 1982, "[a]ll citizens . . . shall have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." As with a Section 1981 claim, "[r]acial discrimination must be shown to state a colorable Section 1982 claim." W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1527 (9th Cir. 1990).

Here, Plaintiff's Section 1982 claim suffers from the same deficiencies as with his Section 1981 claim. To the extent Plaintiff's claim is based on his national origin as French, Plaintiff's claim is inadequate. Additionally, to the extent his claim is based on his race as "white," he fails to provide non-conclusory factual allegations providing a reasonable inference of discrimination. Therefore, Defendants' motions as to this claim are GRANTED. Plaintiff's Section 1982 claim is dismissed without prejudice.

**H. Failure to State a Claim Under 42 U.S.C. § 1983**

Defendants move to dismiss Plaintiff's claims alleging the violation of 42 U.S.C. § 1983 because Plaintiff's claim is not cognizable and does not allege sufficient facts to state a plausible

United States District Court
Northern District of California

claim for relief. See Dkt. No. 42 at 5-9; Dkt. No. 45-1 at 4-5; Dkt. No. 46-1 at 4-5; Dkt. No. 48-1 at 3-4; Dkt. No. 52 at 5-6. As above, Plaintiff's arguments in his opposition brief are unresponsive. See Dkt. Nos. 64, 67, 70, 74, 77.

Under Section 1983, "[e]very person who . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" To establish a Section 1983 claim, "a plaintiff (1) must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." Naffe v. Frey, 789 F.3d 1030, 1035-36 (9th Cir. 2015). "Dismissal of a [Section] 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." Id.

To the extent Plaintiff asserts a Section 1983 claim against Deputy York, Plaintiff has inadequately pled. Plaintiff alleges that Deputy York refused to investigate and file a report about the car theft. Compl. at 37-38 (claim 7). However, the Ninth Circuit has recognized that inadequate investigation is not sufficient to state a civil rights claim. See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985). Therefore, Plaintiff fails to plead a Section 1983 claim against Deputy York.

To the extent Plaintiff asserts a Section 1983 claim against Sheriff Wowak because he is Deputy York's superior, Plaintiff has inadequately pled. Under Section 1983, there is no *respondeat superior* liability. See Castro v. Cnty. of L.A., 797 F.3d 654, 670 (9th Cir. 2015) (noting that a municipality cannot be liable under Section 1983 based the common-law tort theory of *respondeat superior*).[2] Moreover, Plaintiff has not made any factual allegations as to how Sheriff Wowak, personally, violated Plaintiff's civil rights. Therefore, Plaintiff fails to plead a Section 1983 claim against Sheriff Wowak.

---

[2] *Respondeat superior* is the "doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, Black's Law Dictionary (10th ed. 2014).

18

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

To the extent Plaintiff asserts a Section 1983 claim against the private entities and individuals, the plaintiff "bears the burden of establishing that Defendants were state actors" in order to satisfy the second requirement of a Section 1983 claim. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011). State action may be found if "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Id. at 924 (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)). Here, Plaintiff has not alleged that the private Defendants were state actors, or that there was a close nexus that the private Defendants' behavior may be treated as that of the government. On the contrary, most of Plaintiff's allegations indicate that the private Defendants acted under the direction of Lucas or Kwieran, both of whom are private individuals. See Compl. at 28-33 (claims 1-5), 42 (claim 10). Therefore, Plaintiff fails to plead a Section 1983 claim against the private entities and individuals.

Accordingly, Defendants' motions as to this claim are GRANTED. Plaintiff's Section 1983 claim is dismissed without prejudice.

**I. Failure to State a Claim Under 42 U.S.C. § 1985**

Defendants move to dismiss Plaintiff's claims alleging the violation of 42 U.S.C. § 1985 because Plaintiff's claim is not cognizable and does not allege sufficient facts to state a plausible claim for relief. See Dkt. No. 42 at 5-9; Dkt. No. 45-1 at 4-5; Dkt. No. 46-1 at 4-5; Dkt. No. 48-1 at 3-4; Dkt. No. 52 at 7. As above, Plaintiff's arguments in his opposition brief are unresponsive. See Dkt. Nos. 64, 67, 70, 74, 77.

Section 1985 pertains to allegations of conspiracy to interfere with civil rights. "To state a claim under [S]ection 1985, a plaintiff must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Westbrook v. Jen, 921 F.2d 282, 1990 WL 208706, at *1 (9th Cir. 1990) (internal quotations omitted). Moreover, "the absence of a [S]ection 1983 deprivation of rights precludes a [S]ection 1985 conspiracy claim predicated on the same allegations." Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1182 (9th Cir.

United States District Court
Northern District of California

1989).

Here, Plaintiff alleges that Defendants, collectively, conspired to steal his car and avoid the prosecution of those who organized the theft. However, there are no factual allegations that there was a racial or other discriminatory animus behind the conspiracy. Additionally, since Plaintiff's allegations as to the Section 1983 and 1985 claims are identical, the absence of a Section 1983 deprivation of rights precludes the Section 1985 claim. Thus, Plaintiff fails to plead a Section 1985 claim. Defendants' motions as to this claim are GRANTED, and Plaintiff's Section 1985 claim is dismissed without prejudice.

**J. Failure to State a Claim Under 42 U.S.C. § 1986**

Defendants move to dismiss Plaintiff's claims alleging the violation of 42 U.S.C. § 1986 because Plaintiff's claim is not cognizable and does not allege sufficient facts to state a plausible claim for relief. See Dkt. No. 42 at 5-9; Dkt. No. 45-1 at 4-5; Dkt. No. 46-1 at 4-5; Dkt. No. 48-1 at 3-4; Dkt. No. 52 at 7. As above, Plaintiff's arguments in his opposition brief are unresponsive. See Dkt. Nos. 64, 67, 70, 74, 77.

Under Section 1986, "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [S]ection 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured[.]" 42 U.S.C. § 1986. In order to assert a Section 1986 claim, the plaintiff must also assert a Section 1985 claim. See Farley v. Henderson, 883 F.2d 709, 711 n.3 (9th Cir. 1989) ("[Plaintiff] is precluded from bringing a claim under 42 U.S.C. § 1986 because he has failed to allege a claim under 42 U.S.C. § 1985.").

Here, Plaintiff failed to allege a meritorious Section 1985 claim, thus he is precluded from asserting a Section 1986 claim. On this basis alone, Plaintiff fails to plead a Section 1986 claim. Defendants' motions as to this claim are GRANTED, and Plaintiff's Section 1986 claim is dismissed without prejudice.

United States District Court
Northern District of California

**K. Leave to Amend and Conclusion**

The court now considers whether Plaintiff should be permitted leave to amend. "A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015).

Here, it is absolutely clear that certain deficiencies of the complaint cannot be cured by amendment, such as: (1) suing the State of California, state agencies, and state agents because they are immune from suit under the Eleventh Amendment; (2) asserting claims based on the alleged violation of criminal law statutes because they do not provide a private right of action; and (3) asserting claims based on the Code of Federal Regulations because they do not provide a private right of action. These claims and allegations are DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND.

The remaining claims include: (1) asserting personal jurisdiction over Renwick and Jarrett; (2) asserting a claim under 42 U.S.C. § 1981; (3) asserting a claim under 42 U.S.C § 1982; (4) asserting a claim under 42 U.S.C. § 1983; (5) asserting a claim under 42 U.S.C. § 1985; and (6) asserting a claim under 42 U.S.C. § 1986. These claims are DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND. When amending his complaint, Plaintiff shall keep in mind Federal Rule of Civil Procedure 8, providing for "a *short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).

**IV. ORDER**

Based on the foregoing, Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART. If Plaintiff chooses to file a first amended complaint, he must do so on or before **October 16, 2015**. Plaintiff is advised that, although leave to amend has been permitted, he may not add new claims or new parties to this action without first obtaining Defendants' consent or leave of court pursuant to Federal Rule of Civil Procedure 15. Since all claims are dismissed, if Plaintiff does not file an amended complaint by October 16, 2015, the remaining claims will be

United States District Court
Northern District of California

dismissed with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).

The court declines to set a case management schedule at this time but will address any scheduling issues raised by the parties should it become necessary.

**IT IS SO ORDERED.**

Dated: September 28, 2015

EDWARD J. DAVILA
United States District Judge

22

Case No.: 5:14-cv-05372-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS